**ARGONAUT INSURANCE COMPANY,**
Petitioner,

v.

**Dawson NEWMAN, Respondent.**

No. A–8641.

Supreme Court of Texas.

Oct. 3, 1962.

Rehearing Denied Dec. 5, 1962.

872

---

Harris, Anderson, Henley & Rhodes, Dallas, for petitioner.

Tom Bartlett, Jr., Marlin, Gordon R. Wellborn and Rex Houston, Henderson, for respondent.

WALKER, Justice.

This is a workmen's compensation case. Dawson Newman, plaintiff, was injured in the course of his employment when a folding walkway fell on his left foot. By trial amendment plaintiff alleged that he suffered two broken toes and a sprained ankle in the accident, that as a result of such injuries he developed myositis in the left leg, and that the injuries had extended to and disabled his low back and body in general. The trial court rendered judgment on the verdict in plaintiff's favor for total and permanent disability, and the Court of Civil Appeals affirmed. 348 S.W.2d 761. We have concluded that the trial court erred in giving certain instructions to the jury and that the case must be remanded for a new trial.

The terms "total incapacity" and "partial incapacity" were defined in the usual manner in the main charge. The jury was then instructed that "neither total incapacity nor partial incapacity, as such terms are used herein, can exist where an injury and its effects are confined solely to the toes, to the foot, or to the leg, or where the injury produces only a loss of the use of the toes, the foot, or the leg." Defendant objected to this instruction on the ground that it informed the jury of the effect of their answers, constituted a comment on the weight of the evidence, and was not a proper instruction under the Workmen's Compensation Law. Such objection was overruled.

After deliberating for about three hours, the jurors returned into open court and announced that they had reached a verdict. For convenience the answers upon which they had agreed at that time will be referred to as the first verdict. Having concluded that some of the findings were conflicting in certain respects, the trial judge gave the jury additional written instructions which are quoted in the margin.[1] The jury

---

1. "You have answered special issues one, two and three that the injuries to Dawson Newman's toes and foot resulted in his incapacity, that such incapacity was total, and that such total incapacity is permanent. In special issues 9, 10, 12, 13, 15, 17, 18, 20, 21, 25, 26, 28, 29, 31, 33, 34, 35, 36 and 37 you have answered that plaintiff suffered total and partial incapacity to his toes, his foot and his leg. *As you are instructed on page 9 of the court's charge neither total incapacity nor partial incapacity can exist where an injury and its effects are confined solely to the toes, to the foot, or to the leg, or where the injury produces only a loss of the use of the toes, the foot, or the leg. Stated another way, a man cannot have total disability to his body in general and total or partial disability* to a specific member of his body at the same time.

"You have also answered in special issue number 16 that the injury to plaintiff's toes extended to and affected his left foot; in special issue number 24 that the injury to plaintiff's foot extended to and affected his left leg; and in special issue number 32 that the injury to plaintiff's leg extended to and affected parts of his body other than the leg. These three answers are not in conflict with each other; however, in special issue number 33 you answered that plaintiff's incapacity to his foot was caused solely by the loss of the use of the toes; in special issue number 34 you answered that the incapacity to plaintiff's leg was caused solely by the loss of the use of the left foot; in special issue 35 you answer-

was again advised that neither total nor partial incapacity can exist where an injury and its effects are confined to the toes, to the foot, or to the leg, or where the injury produces only a loss of the use of the toes, the foot or the leg. Defendant objected to the additional instructions and pointed out that "such comments and explanations of the Court constitute a comment on the weight of the evidence and advise the jury of the effect of their answers to the special issues and especially is this true by explaining to the jury that in answering Special Issues Nos. 1, 2 and 3, that they have found the plaintiff to be suffering from total and permanent incapacity and explaining to the jury not once, but twice, in such special

> ed that the incapacity of plaintiff was caused solely by the loss of use of the left leg; in special issue number 36 you answered that plaintiff's incapacity is caused solely by his use or attempted use of his injured toe; and in special issue 37 you answered that plaintiff's incapacity is caused solely by his use or attempted use of his injured foot. The answers to special issues 16, 24, and 32 are in conflict with the answers to special issues 33, 34, 35, 36 and 37. And, as indicated in the first paragraph above, the answers to special issues one, two and three are in conflict with the answers to special issues 9, 10, 12, 13, 15, 17, 18, 20, 21, 25, 26, 28, 29, 31, 33, 34, 35, 36 and 37.
>
> "The Court does not desire to indicate how you shall answer the special issues, but only to point out the conflict in your answers; so, as stated in the main charge, you must answer the special issues as you find the facts to be and you are entirely free to make any answer to any special issue in the court's charge as you may find from a preponderance of the evidence, and you will return to your room and reconcile your answers." (Emphasis supplied).

2. "Special Issue No. 1: Do you find that the injury to Dawson Newman's toes and foot on November 13, 1959, naturally resulted in his incapacity in any percentage for any length of time?

> "Answer: (first and second verdicts) Yes.

"Special Issue No. 2: Do you find that Dawson Newman's incapacity to work, if any, was total for any length of time?

instructions, that they cannot make the answers to the other special issues that they have made and also find the plaintiff is totally and permanently disabled." These objections were also overruled.

The jury retired for further deliberation and after about thirty minutes returned another verdict. This second verdict was accepted by the trial court, and judgment was rendered thereon in plaintiff's favor for total and permanent disability. The substance of the special issues that are necessary to an understanding of our holding and the answers made by the jury in response thereto on each occasion are set out in a footnote to this opinion.[2] Special

> "Answer: (first and second verdicts) Yes.
>
> "Special Issue No. 3: Do you find that such total incapacity, if any, was or is permanent or temporary? "Answer: (first and second verdicts) Permanent.
>
> "Special Issue No. 9: Do you find that the injury to plaintiff's toes on the 13th day of November, 1959, has resulted in a total loss of the use of said toes?
>
> "Answer: (first verdict) Yes.
> (second verdict) No.
>
> "Special Issue No. 10: Do you find such total loss of use to be permanent or temporary?
>
> "Answer: (first verdict) Permanent.
> (second verdict) Not answered.
>
> "Special Issue No. 12: Do you find that the plaintiff has or will suffer any partial loss of use of his toes as a result of the injury to said toes on the 13th day of November, 1959?
>
> "Answer: (first verdict) Yes.
> (second verdict) No.
>
> "Special Issue No. 16: Do you find that the injury to plaintiff's toes, if any, extended to and affected his left foot, thereby causing incapacity?
>
> "Answer: (first and second verdicts) Yes.
>
> "Special Issue No. 24: Do you find that the injury to plaintiff's foot, if any, extended to and affected his left leg, thereby causing incapacity?
>
> "Answer: (first and second verdicts) Yes.
>
> "Special Issue No. 32: Do you find that the injury to plaintiff's leg, if any, ex-

instructions and language placing the burden of proof have been omitted.

■ Defendant's attack here is directed, as it was in the Court of Civil Appeals, at the italicized portion of the additional instructions. These instructions, as well as the one given in the main charge, are misleading and erroneous comments on the weight of the evidence. See Rule 272, Texas Rules of Civil Procedure. If Texas Employers Ins. Ass'n v. Goines, Tex.Civ. App., 202 S.W.2d 487 (wr. ref. n. r. e.), holds to the contrary, the decision is unsound and will not be followed in that respect. Although our law does not provide for compensation in the same amount that would be awarded for disability caused by a general injury or by an extension of a specific injury, a claimant may in fact suffer either total or partial incapacity as the result of an injury that is confined to a specific member. In Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463, it was pointed out that "where injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, *even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor.* But an employee is not precluded from recovering for total incapacity if he alleges and proves that the injury to the particular member also extended to and affected other

portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him." (Emphasis supplied.) If the evidence shows that the claimant is totally or partially disabled from performing the usual tasks of a workman, the jury may properly find that he has suffered incapacity even though it also concludes that his injuries are confined to a specific member.

■ There is evidence in this case to support the conclusion that the plaintiff has suffered no incapacity apart from some loss of the use of his toes. One of the principal issues is whether the injury to the toes extended to and affected his body in such manner as to entitle him to compensation for total and permanent disability. Both verdicts contain findings that the injury to the toes extended to and affected the foot, that the injury to the foot extended to and affected the leg, and that the injury to the leg extended to and affected the body. When the first verdict was returned, however, the jury was unwilling to say that the incapacity to the foot was not caused solely by the loss of use of the toes, that the incapacity to the leg was not caused solely by the loss of use of the foot, or that plaintiff's incapacity was not caused solely by the loss of use of the leg. The jurors should have been permitted to consider and answer the extension and confinement issues without being told, in effect, that if they concluded that the plaintiff had sustained either total

tended to and affected parts of his body other than the leg?
"Answer: (first and second verdicts) Yes.
"Special Issue No. 33: Do you find that the incapacity, if any, to the foot of plaintiff, was not caused solely by the loss of the use of the toes on the left foot, if any?
"Answer: (first verdict) It was.
(second verdict) It was not.
"Special Issue No. 34: Do you find that the incapacity, if any, to the leg of plaintiff was not caused solely by the loss of the use of the left foot, if any?
"Answer: (first verdict) It was.
(second verdict) It was not.
"Special Issue No. 35: Do you find that

the incapacity of plaintiff, if any, was not caused solely by the loss of use of his left leg, if any?
"Answer: (first verdict) It was.
(second verdict) It was not.
"Special Issue No. 36: Do you find that the plaintiff's incapacity to work and earn money, if any, is not caused solely by his use or attempted use of his injured toes?
"Answer: (first verdict) It was.
(second verdict) It was not.
"Special Issue No. 37: Do you find that the plaintiff's incapacity to work and earn money, if any, is not caused solely by his use or attempted use of his injured foot?
"Answer: (first verdict) It was.
(second verdict) It was not.

or partial incapacity they should also find: (1) that his injuries extended to the body, and (2) that his incapacity was not caused solely by the loss of use of a specific member.

It is apparent from the manner in which the jurors dealt with Special Issues Nos. 9 and 12 that they were confused and misled by the instructions. The evidence leaves little room to doubt that plaintiff had suffered at least some loss of use of his toes. In the first verdict there were findings that such loss of use is both total and partial. After the additional instructions were given, the answers to these issues were changed and the jury refused to find any loss of use of the toes.

■ In our opinion the case has not been properly tried, and it should be tried again. It is unnecessary, therefore, to discuss some of the questions brought forward for review, but an expression of our views on several other matters may be of assistance on a second trial. The manner in which the case was submitted to the jury is somewhat unusual. Special Issue No. 1 as originally prepared by the trial court inquired whether the injury sustained by plaintiff naturally resulted in his incapacity. Upon objection by defendant, the issue was rephrased and limited to the injury to plaintiff's toes and foot. Although plaintiff argues to the contrary, we do not think the jury's answer in response thereto can be regarded as a finding that he sustained incapacity as the result of an original general injury to the body. The issue as finally submitted simply had no place in the charge. When an injury is confined to a specific member, the amount of the recovery is determined by the extent to which the claimant has lost the use of that member. If an injury to a specific member extends to and affects the body in general, the crucial inquiry is whether such extension has caused incapacity. The fact that a specific injury in itself may disable the claimant is immaterial.

If the plaintiff expected to recover for general incapacity on the theory that the toe injury had extended to and affected the body and thereby caused disability, it was necessary for him to obtain a finding to that effect. Apparently he was attempting to trace an extension of such injury through the foot and leg to the body by the answers to Special Issues Nos. 16, 24 and 32, but we do not think the verdict is subject to that construction. The answer to Special Issue No. 32, for example, would ordinarily be regarded as a finding that an original injury to the leg had extended to and affected the body. We find nothing in the charge to indicate that the court was there inquiring whether the toe injury had further extended from the foot through the leg to the body. It should also be pointed out that there is no express finding that incapacity has resulted from the extension of any injury to the body.

The judgments of the courts below are reversed, and the cause is remanded to the district court for a new trial.