## LIBERTY MUTUAL INSURANCE COMPANY, Petitioner,

v.

### Charlie LEE, Respondent.

### No. A-9957.

Supreme Court of Texas.

July 15, 1964.

Donald R. Hallmark, Houston, for petitioner.

James H. Campbell, Houston, for respondent.

GRIFFIN, Justice.

This is a workmen's compensation suit brought in a district court of Harris County, Texas, by respondent Lee against petitioner Liberty Mutual Insurance Company, seeking to recover for total and permanent incapacity resulting from an injury sustained by plaintiff.

It is stipulated that Charlie Lee, the workman referred to herein, sustained about September 30, 1960, an injury in the course of his employment by Texas Creosoting Company, at which time he had an average weekly wage-earning capacity of sixty dollars. The stipulation evidences agreement that any award recovered be paid in a lump sum, and that the workman had been paid $805.00 by Liberty Mutual Insurance Company, hereafter called defendant, subsequent to the injury at the rate of $35.00 per week, for twenty-three weeks' total disability.

Upon the trial, the jury found in answer to special issues submitted to them, that the plaintiff, as a result of accidental injuries, suffered total incapacity which is permanent; that the total incapacity was not due solely to the loss of the use of his left leg; that the injury to plaintiff's left leg resulted or will result in total loss of the use of the leg and is permanent in nature; that the injury sustained is not confined to the left leg and plaintiff's incapacity was not due solely to the loss of use of the left leg; and that there was no partial disability.

On this verdict, the trial court entered judgment for plaintiff against defendant for a lump sum for 401 weeks, less the

amounts theretofore paid to plaintiff by defendant, plus 4% interest from the date the jury returned its verdict.

On appeal, the Court of Civil Appeals affirmed. 377 S.W.2d 781.

Defendant's petition for writ of error was granted on its assignment that there was no evidence to support the jury's findings of total incapacity; and that such was permanent; and that the total incapacity is not due solely to the loss of use of plaintiff's left leg, and that the injury to plaintiff's left leg resulted in the permanent loss of use of that leg.

■ We have read the statement of facts to see if there is evidence of probative force to sustain the jury findings. We must consider only that evidence which would sustain the jury's findings and disregard all other evidence.

Plaintiff's witnesses were his wife, the doctor whom plaintiff had selected to treat his injuries, and plaintiff.

With regard to the nature and extent of plaintiff's injuries and resulting disability, plaintiff testified that on September 30, 1960, the date it was stipulated he sustained an accidental injury, he and other workmen were engaged in unloading poles about 40 feet long, from a freight car by means of an unloading crane. The plaintiff, and others, would pass a wire line or cable around about five or six of these large poles. The crane would then lift the poles out of the car and place the poles on the ground. While in the process of lifting a load of poles from the car, the load swung around and against plaintiff's leg. When asked how he was injured, plaintiff testified that after the load was ready to be lifted out of the car, he, plaintiff, walked down to the end of the car. When the crane operator picked up the load it swung into plaintiff and mashed his left leg up against the end of the freight car. Five or six of these poles swung into plaintiff and hit his left leg. The main blow he sustained was on his left knee which was mashed up

against the railroad car. He testified that no part of his body hit the car, but his knee was mashed. In answer to his counsel's question, "So it knocked your left knee and left side against the car?" he answered, "Yes."

On cross examination, plaintiff was asked, "What part of your body got mashed up against the side of the car?" He answered, "I don't know—just my knee and, you know, when I do lots of walking my whole side goes to hurting." He also testified that no part of his body other than his left knee was mashed up against the box car, but "I believe my hip hit the top end of the car." He said at the time he was not "interested in nothing" but his knee. He also testified, "I ain't saying no other part hit my leg." In his deposition taken shortly after the accident, he testified that no other part of his body hit the box car, and that his knee was mashed, and just his left knee.

Plaintiff went back to his job and worked for a few weeks. His knee swelled up on him and hurt him very badly and he had to quit his work. In an effort to relieve the pain in his knee, plaintiff was operated on by a Dr. Fain. This operation on the knee did not relieve the swelling or the pain, and plaintiff consulted other doctors, particularly Dr. Zionts, who testified on behalf of the plaintiff.

With regard to how and where plaintiff hurt, and the effects of his trying to work, both before and after the operation, plaintiff testified that he could not do the heavy work he did before the injury; that when he worked his knee and leg swelled up on him and pained him; that after he had worked for a few hours his left leg would swell up on him, and that a little place in his back would hurt; that sometimes when he had worked a few hours a real hard pain would hit "right down here (demonstrating, but the record does not show what part of his body he had in mind, but we will presume from the record he meant his left knee or leg) and goes up my left side." He

would have a pain "down here" (demonstrating again, but not identifying for the record) and the pain would radiate up the body. His knee hurt and it was very painful at times, and he could not get any sleep on account of his knee hurting him. There is no evidence that any injury to plaintiff's side, back, or hip caused any pain or in any manner interfered with plaintiff working. It was the left knee and left leg which swelled and caused pain that radiated to the side.

There were no pleadings that the injury to plaintiff's left knee extended to and affected other parts of his body. No issues on this were requested, nor submitted. Plaintiff says in his answer to the application for writ of error that this ground of recovery is not in this case.

Mrs. Lee, wife of plaintiff, testified that he was in good health prior to the injury on September 30, 1960, and was able to work; that plaintiff has complained of pain since the injury; that since the accident and since the operation on plaintiff's knee she has tried to help plaintiff with his knee by rubbing his knee and back and putting icebags on his knee when it had fever in it. This is the extent of her testimony.

Plaintiff's only medical witness was Dr. Zionts, to whom plaintiff went for treatment after his operation. Dr. Zionts testified that plaintiff came to his office in April, 1961, after his operation in December, 1960. He testified in detail as to the plaintiff's history of his injury and suffering. Plaintiff told the doctor that the injury was to the left knee and did not mention any other injuries. He did tell the doctor that he had hurt his back in 1957 and 1958. The doctor made an examination of plaintiff's head, eyes, ears, nose, throat, neck, chest, heart, lungs, abdomen, inguinal area, and back and found all normal. He saw the knee on various occasions when it was swollen and recommended that a second knee operation be offered to plaintiff, as it might help his knee. He testified that due to the condition of plaintiff's

knee he would be unable to hold a job which required heavy labor, walking on uneven ground, climbing or walking up stairs. He attributed the backache which plaintiff had mentioned as resulting from a strain on the muscles of the back in trying to protect the injured leg. The doctor testified that plaintiff's condition with his knee is permanent. In answer to a question as to whether or not there was a "total disability as to that leg," the doctor said: "You say totally; he can't use it at all? No, he can use it. I would say the whole leg is involved. It is not totally disabled like if completely gone, but I would say it is a minimum of fifty percent disuseful to him." The doctor further testified that as for heavy work, plaintiff's leg was 100% disabled, but that the functional disability of the use of the left leg was at least 50%.

The defendant put on two doctors, and their testimony was that plaintiff's injury and resulting disability was from the knee injury. They estimated his incapacity to his leg from 4% to 50% permanent partial.

■ We find no evidence that would justify the recovery for total, permanent disability and its resulting incapacity.

The evidence shows that the only injury which plaintiff suffered was to his left knee; that his disability to work is a result of this injury; that when plaintiff tries to work, he can only work for four or five hours, when his knee will swell up on him to such an extent that he can no longer work and is forced to quit. There is enough testimony to support the jury finding that the condition of plaintiff's knee is a permanent condition and one which will prevent his holding a job requiring the use of that left leg.

The law governing this case has been declared by this Supreme Court in two fairly recent opinions:

Texas Employers' Insurance Association v. Brownlee, 152 Tex. 247, 256 S.W.2d 76 (1953), was a case where the employee, Brownlee, had sustained an injury to two

fingers of his right hand. Plaintiff filed suit alleging injury to the two fingers, and also alleging that such injury "extended to and affected his entire right hand" in the performance of labor, and he sought recovery for total loss of use of his right hand. We have no pleading of "extension and affecting" in our present case.

The cause was tried to a jury, and the jury answered special issues that (1) plaintiff sustained 50% partial loss of use of the fingers, which (2) was permanent; that these injuries extended to or affected his right hand other than the fingers, and plaintiff's incapacity was not confined to his fingers, and that plaintiff sustained 50% permanent partial loss of use of his right hand.

Judgment was rendered for plaintiff for loss of use of his right hand, and the Court of Civil Appeals affirmed. 256 S.W.2d 857.

The Supreme Court reversed and rendered judgment only for the loss of the fingers.

The Court said:

"If there was impairment of the use of the hand, other than that merely resulting to it from the loss of the fingers, there would be liability supporting recovery in proportion to such impairment of the use of the hand; but, if the evidence shows that the hand was not impaired except as it was affected by the loss of the fingers, there would be, under the plain provisions of Article 8306, Section 12, supra, no recovery allowed for the loss of use of the hand. In other words, if the loss of the use of the hand resulted solely from the injury to the fingers, the respondent would be limited in his recovery to that provision of the statute which provides for compensation in the event of the loss of, or the loss of the use of, the fingers."

Again, the Court says:

"Where injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, *even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor. * * *.*" (Emphasis added).

In Texas Employer's Insurance Association v. Espinosa (Tex.Sup.Ct., 1963), 367 S.W.2d 667, in discussing whether a specific partial incapacity could develop into a general incapacity, the Court said:

"It is the policy of the workmen's compensation law to award compensation for certain specifically designated losses, such as the loss of an eye; such injuries being considered as cases of partial incapacity. Article 8306, § 12. It follows that a specific partial incapacity cannot develop into a general incapacity under Article 8306, § 10 of the Workmen's Compensation Act, when the disabling incapacity consists of pain and dizziness and results solely from using or attempting to use an eye or other member of the body for which specific compensation is provided by Article 8306, § 12. This question was squarely stated and answered by the Fort Worth Court of Civil Appeals in Coleman v. Hartford Accident & Indemnity Company, 297 S.W.2d 236, in which this Court refused writ of error. We quote from the opinion:

" 'Quare: Where a claimant under the Texas Workmen's Compensation Act sustains an injury to a specific member mentioned in Section 12 of Article 8306, V.A.T.S., and such injury results in a percentage of permanent partial loss of use of such member, may he recover compensation for future general incapacity occasioned as the result of pain incident to any attempted utilization of the member's remaining use, such pain originating in the injured member and extending to

and affecting other portions of his body?

"Answer: No.'"

Although the evidence does not support the jury's answer to the special issues as to general incapacity, or the trial court's judgment, the evidence above set out supports the finding of the jury that plaintiff is entitled to recover for the permanent total loss of use of his leg. Under proper pleadings and findings the jury answered that plaintiff does have a permanent total loss of use of his left leg. Travelers Insurance Company v. Seabolt (Tex.Sup. Ct., 1962), 361 S.W.2d 204 (2, 3).

The judgments of both courts below are hereby reversed and the cause remanded to the trial court to render judgment in accordance with this opinion.