**The AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

**J. D. DOOLEY, Appellee.**

**No. 4534.**

Court of Civil Appeals of Texas.

Waco.

Nov. 10, 1966.

Rehearing Denied Dec. 8, 1966.

Naman, Howell, Smith & Chase, Louis Muldrow, Waco, for appellant.

Tom Beard, Hillsboro, for appellee.

OPINION

TIREY, Justice.

This action was brought by Dooley to recover compensation benefits, and the jury answered all special issues favorable to him, and the court's judgment awarded him a recovery of benefits for total and permanent disability in a lump sum in keeping with the verdict.

Dooley went to trial on his original petition. Pertinent to this discussion he alleged:

"Plaintiff says that he has had no medical training and cannot describe his injuries in exact language; he says, however, that while he was working as a driver and deliveryman for Julius Crain in his business as a consignee of the Sinclair Oil Company as he was delivering gasoline to a customer, plaintiff was standing on the running board of a truck and had hold of a handrail used to assist in entering and leaving the cab of the truck. Plaintiff's foot slipped off of the running board of the truck, thus jerking, tearing and damaging the muscles, ligaments and tendons of his right arm, right shoulder and upper back at the point where they attach to the upper arm bone and extending over to and at the point where they attach to his back.

"These injuries have rendered him unable to do the ordinary tasks of a workman to such an extent that he can both secure and retain employment doing ordinary manual labor, and therefore he is totally and permanently disabled within the meaning of the Texas Workmen's Compensation Act.

"The plaintiff says that if at the time the accidental injuries above enumerated were sustained the plaintiff was suffering from arthritis or any other disease or condition, then that the same was not disabling but that the injuries above complained of caused such disease or condition to become aggravated or excited so that it also became a producing cause of the plaintiff's disability."

The judgment is assailed on what appellant designates as forty-three points. However, it says that its contentions fall into three general categories: (1) no evidence; (2) weight and preponderance of the evidence, and (3) defects in the trial court's charge. Plaintiff sought recovery on the basis of general injury. Only three witnesses testified, namely: Julius Crain, plaintiff's employer; plaintiff, and Dr. Shirey, the treating physician. Mr. Crain, the employer, testified to the effect that plaintiff was in his employ and was driving a truck for him, delivering oil products to his customers, and that plaintiff reported to him that he received an injury to his right arm around the first week of September, about September 8th, and he stated to his employer that he slipped from the truck and injured his right arm in falling; that plaintiff did not describe the injury to him, but told him in effect that his right arm hurt him and that he complained of his right arm, and that in attempting to work in loading and unloading the truck plaintiff complained of inability to do the work because of the injury he sustained to his right arm. The plaintiff, in describing his injury, described it to the effect that while in the course of his employment he undertook to get off of his truck and that as he did so: "I caught my hand and arm up in that door and pulled all of my weight down to the ground. Well, I run around there like I don't know what for about 10 or 15 minutes, it hurt so bad I didn't know what to do. I thought it was broken and I commenced trying to raise it up and I said well, I guess I didn't break it, but it hurt so bad." He further said with reference to the injury:

"A. Well, it pulls from back here in this shoulder way back here somewhere plumb on down into the elbow.

\* \* \* \* \* \*

A. Up in there somewhere and now, when I strain or pull on it any way, it pulls back there still.

\* \* \* \* \* \*

Q. Down over your shoulder and into your arm and down to your elbow?

A. Well, it don't make any difference. That is as high as I can get the arm right now and I don't care how I pull it and it don't make any difference how I shape it or how I pull it, it hurts. Just a stiffness there. There is still quite a bit of hurt when I move around this way so, if I was trying to do anything with it, I don't think that anyone could continue on with a hurt all day long and rest at night and hold a job. I don't think they could."

Dr. Shirey testified in part as follows:

"Q. Doctor, would you explain exactly what this injury to this muscle here was?

A. The muscle that—

Q. Maybe I can get Mr. Dooley up here and you can demonstrate to the jury what it is?

A. We have one large muscle. Actually, we have any number of muscles, but we have one large muscle that fits right across like this and comes down to about a point and fastens right here. It is the principal muscle that we have for elevating the arm.

Q. Where does it join over in the back?

A. It fits completely across to the collar bone and the shoulder blade and various other muscles and comes down in a triangle shape. That is why it is called the deltoid muscle, meaning triangle and this was always his point of tenderness that he would always come back to."

Dr. Shirey further stated: *"It is the point about four or five inches below the shoulder joint, at which site the deltoid muscle attaches to the arm bone, to the humerus.*

\*   \*   \*   \*   \*   \*

Q. Now, Doctor, he had an injury of that muscle, didn't he?

A. I thought the primary injury was to the tendon of the muscle and technically the tendon is part of the muscle, but the real injury I think was at the point of attachment of the muscle.

Q. But there would be a bruising type injury to the muscle?

A. It is not unusual to have radiated pains into a pain and into an area around in the joints and other areas from any injury of this type.

\*   \*   \*   .\*   \*   \*

Q. Now, all the time you treated Mr. Dooley, he did complain not only at the maximum point of tenderness, but also up into and over the shoulder blade itself?

A. As I recall, he complained mostly of pain at the point of maximum tenderness, but also at other points about the shoulder, particularly in the region about the shoulder blade.

Q. If you would, Doctor, it might help us if you would just read each of your notes as they come, just on the front sheet here. I think you have a kind of a summary of what you wrote down each time he visited you in chronological order?

A. On November the 11th, 1964, I made a note, 'Injected the right trigger.'

Q. Let me see?

A. November the 11th, 1964 'Injected trigger points of right shoulder with two percent procaine.'

Q. What are the trigger points of the right shoulder?

A. Trigger points are tender areas.

Q. \* \* \* November the 14th, 'Advised patient to enter hospital'. November 28th, 'Patient much better'.

See again on December 9th, 'may be able to go to work on December the 15th.' On December the 9th, 'Right shoulder still sore, but better. Advised very light exercise, such as brushing hair, walking wall and so on'. * * * On December the 16th, 'Patient still complaining of pain in right shoulder. Urged to begin exercises to insure against frozen shoulder'. December 23rd, 'Still hurts a lot in the right shoulder with very much movement. Urged patient to continue to use it to keep it limber'. December 30th, 'Patient admits that he feels better and that he has a better range or motion of the right arm and shoulder'. January the 11th, 1965, 'Patient seems better. Still having some trouble getting right hand behind him or above his head. Having a lot less pain. * * *'. See again about February the 1st, 'Do not believe patient could return to work before then.' February the 1st, 'Patient remains about the same. * * *'. February the 11th, 'Still hurts with all ranges of motion of right arm above the shoulder level.' * * * February the 9th, 'Patient wants to put in for social security disability, which I believe he is entitled to. * * *'. 5th, 'talked to patient and advised him that I preferred not to send any disability papers until Workman's Compensation case was settled.'

\* \* \* \* \* \*

Q. Now, Doctor, when you told the jury that this * * * man was five percent disabled, you were taking into consideration his whole condition?

A. That is correct.

Q. And do you believe that he is able to work?

A. It was my opinion at the time that I wrote my various notes about him that he could, jobs not involving above the shoulder employment.

Q. He could lift all he wanted to?

A. I don't believe lifting would have any effect on it.

Q. But at that time, you believe that he was five percent disabled?

A. My five percent—to me, the five percent disability means that a man without special skills could find 95 other jobs that wouldn't involve work about his head.

Q. But if he couldn't do a job with work above his head, you would have to change your opinion?

A. If the only kind of employment he could find was employment involving something from here up then, I would have to say he would be totally disabled.

Q. And if he couldn't lift and the only job he could find was one that required lifting, you would also say he was totally disabled?

A. I didn't say he couldn't lift.

Q. If he couldn't lift, you would have to change your opinion?

A. That is right."

Appellee, in his brief, says:

"Appellant's basic contention is that this is not a general injury and there is no evidence to sustain the jury findings that it is in fact a general injury.

"The most salient evidence in this regard was elicited from Dr. Shirey on cross examination when he read his own records to the jury. This evidence revealed that the injury was indeed to the arm, shoulder and back. It also revealed that there was considerably more treatment to the shoulder and back than to the arm."

■ We have carefully considered the evidence in this cause and we are of the

view that neither the testimony of the appellee nor the testimony of the treating physician will support the jury finding that the appellee was totally and permanently disabled.

Going back to Dr. Shirey's testimony we find that he stated:

> "There was, in his x-rays, what we consider to be * * * an area of what we call periosteal irritation. The covering membrane of a bone is called the periosteum and this muscle attaches into that thick dense tissue and there was a little area in his x-ray that looked as if it might be a slight tear *at that point* in this tissue.

Q. Now, doctor, he had an injury to what muscle, didn't he? * * *

A. I thought the primary injury was to the tendon of the muscle and technically the tendon is part of the muscle, *but the real injury I think was at the point of attachment of the muscle."*

Dr. Shirey further stated:

> "It is not unusual to have radiated pains into and pain into an area around in the joints and other areas from an injury of this type.
>
> * * * * * *
>
> Q. Doctor, during your treatment of Mr. Dooley, did he also complain not only of this tenderness, *but also of the pain that radiated up and affected his whole shoulder?* (emphasis added)
>
> A. I believe that is right. I am speaking now that this was the maximum point."

We think the record is clear from a careful consideration of the testimony of all three witnesses, that appellee received an injury to his right arm, but we are of the further view that the evidence shows that the injury is to the right arm only. It is also true that the record reveals that plaintiff suffered some radiation of pain from the arm into the shoulder, but there is an absence of testimony showing any damage or harm to the physical structure of the shoulder or back. It is true that there is testimony from the appellee to the effect that he experienced a pulling sensation in his shoulder at times, but this pulling sensation came to him upon the use or attempted use of his right arm. We think the factual situation here is very similar to the factual situation which was before our Supreme Court in Liberty Mutual Insurance Company v. Lee, 381 S.W.2d 172. In that case, the plaintiff alleged a general injury, and there was no question that he had sustained an injury to his leg, but the case was pleaded and submitted to the jury on the basis of a general injury. There was no pleading of injury extending to or affecting other parts of the body. In the case before us we have previously stated that plaintiff alleged a general injury to his arm, shoulder and back. There is no pleading to the effect that appellee suffered a specific injury to his right arm, extending to and affecting other parts of his body. A careful examination of the evidence before the Supreme Court in the Lee case, and the record in this case, will reflect that the injuries are very similar in effect, save and except in this case we have an injury to the right arm instead of a leg injury. As we read the Lee case, there is probably more evidence of a general injury in that case than there is in the case before us. In the Lee case, the evidence showed that the blow that plaintiff sustained to his left knee was severe, and that he later had pain in the knee and in his leg, radiating to his left side and back, but the Supreme Court held that there was no evidence of injury other than to the leg and to the knee. Further considering the Lee case, the plaintiff in that case sustained an injury to his left knee, and the injury was such that it required an operation, and that after the operation, when he worked, his leg and knee would swell after a few hours, and that a small place in his back would hurt, and his condition was such that he could

not get any sleep at night; however, plaintiff did not plead that the injury he sustained extended to and affected other parts of the body, and no issues on these matters were submitted. That is the exact situation here. In the Lee case there was testimony to the effect that the plaintiff's knee condition was permanent, but the evidence was without dispute that Lee was still working and that the doctor said he could use the leg, but that the whole leg was involved, but that claimant was not totally disabled. In the case at bar, plaintiff can use the right arm, but that he has a limited use of the right arm when he attempts to lift things that must be lifted above his head.

Going back to the Lee case, the court expressly held, after detailing the injury to Lee's knee and leg, that: "We find no evidence that would justify the recovery for total, permanent disability and its resulitng incapacity." See Texas Employers' Insurance Association v. Brownlee, 152 Tex. 247, 256 S.W.2d 76. In the Lee case, we find the following statement:

> "Where injury results to a particular member of the body, compensation for the loss of which is specifically provided by statute, the liability of the insurer is limited to that amount, *even though the loss of or injury to that particular member actually results in total permanent incapacity of the employee to labor. * * *"*

See Texas Employers' Insurance Association v. Espinosa, Tex.Civ.App., 367 S.W. 2d 667.

In Travelers Ins. Co. v. Marmolejo, Tex. Civ.App., 383 S.W.2d 380, our Supreme Court made the following statement:

> "It was held in Espinosa and Brownlee, moreover, that *pain* caused by an injury to a particular member *and felt in another part of the body* is not, of itself, sufficient to support a recovery for anything more than the original specific injury." (emphasis added).

■ In the cases cited, it is a settled rule in Texas that a specific partial incapacity cannot develop into a total permanent injury under Article 8306, Sec. 10, of the Workmen's Compensation Act, as fully explained by our Supreme Court in the Lee case.

That leads us to say that since there is no evidence of any injury sustained by appellee other than the injury to the right arm, and since we are of the further view that there is no evidence of any total general disability, and being of the further view that the evidence shows, as a matter of law, that appellee had no radiation of pain or involvement of the shoulder, except on use or attempted use of his right arm that the appellee's only compensable incapacity is confined to his right arm. Being of this view, this will require that this cause be reversed and remanded for a new trial in order that the court may fix appellee's compensation for the injury sustained to his right arm. See Aetna Casualty and Surety Company v. Bryant, Tex.Civ. App., 383 S.W.2d 229, (n. w. h.).

■ In the event we are mistaken in the foregoing views expressed, then and in such event we are of the further view that the verdict of the jury in which it found total and permanent disability for the claimant is so against the great weight and preponderance of the evidence as to be wrong, and this view would require that the cause be reversed and remanded.

Accordingly, Appellant's points 1, 2 and 19 are sustained.

Because of the views here expressed, and because the cause will have to be reversed and remanded, further comment would be of no avail, nor would it be of any value to comment further on the assignments made by appellant.

For the foregoing reasons, this cause is reversed and remanded.