The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Simon GUIDRY, Jr., Appellee.

No. 7173.

Court of Civil Appeals of Texas, Beaumont.

Nov. 25, 1970.

Rehearing Denied Dec. 17, 1970.

**171**

Strong, Pipkin, Nelson, Parker & Powers, Beaumont, for appellant.

Joe H. Tonahill, March H. Coffield, Jasper, for appellee.

KEITH, Justice.

In this workmen's compensation insurance case, Guidry, as plaintiff, recovered judgment against the insurer as and for total and permanent disability based upon favorable findings by a jury. Plaintiff's left tibia was fractured when a radiator exploded on October 20, 1966, while he was in the employ of Texaco, Inc. As a result of this accidental injury, his left leg was bowed and remained shorter than his right leg. However, in his pleadings, plaintiff sought to recover as for a general injury, alleging that he received disabling injuries to his left leg, back and spine.[1]

Defendant's pleadings contended that plaintiff's disability was confined solely to the left foot below the knee, or in the alternative, that plaintiff's disability to any other portion of his body was caused by the use or attempted use of his left leg.

The jury made the following findings: Plaintiff sustained an accidental injury to his body on October 20, 1966, resulting in total and permanent disability beginning that same date. The injury of that date to plaintiff's left leg affected parts of his body other than the left leg, thereby causing incapacity. The injury to plaintiff's left leg on October 20, 1966 has extended to and affected other parts of his body, thereby resulting in additional disability. Plaintiff's incapacity was not solely caused by other accidents, injuries, diseases, or bodily conditions existing and arising wholly separate and apart from the injury sustained on October 20, 1966. The effects of the injury were not confined solely to plaintiff's left foot. Plaintiff's disability was not caused solely by the use or attempted use of plaintiff's left foot. The effects of the injury were not confined solely to plaintiff's left leg. Plaintiff's disability was not caused solely by the use or attempted use of plaintiff's left leg.

Defendant's first series of points is that there was no evidence of probative value to support the submission of Special Issues One through Five concerning disability arising from a general non-specific injury, and that the jury findings as to those five issues were against the great weight and preponderance of the evidence. We look solely to the evidence favorable to such findings in passing upon the "no evidence" points, and we consider the entire record in passing upon the "great weight and preponderance of the evidence" points.

1. Plaintiff also had an allegation to the effect that his injury to his leg precipitated a heart attack, these being his allegations: Following those relating to his lower back, etc.—" * * * all of which has produced and caused great and disabling anxiety and humiliation because subsequently he was forced to leave the United States Marine Corps Aviation as a fighter pilot where he held the rank of Lieutenant Colonel in the Marine Corps Reserve, a status in life which he valued very highly *because*

*plaintiff is an outstanding, patriotic American and profoundly loved his country,* and as a result of these disabling injuries and disabling anxieties, said accidental injury naturally resulted in a heart attack and coronary occlusion on July 14, *1968,* which arose out of the injuries hereinabove stated and were naturally caused by the injury hereinabove stated which occurred on or about October 20, *1966* * * *" (Emphasis supplied.)

At the time of trial, plaintiff was forty-eight years of age, married and the father of six children. Following his high school graduation, he attended college for two years, and served four years in the Marine Air Corps during World War II. He then went to work for Texaco, Inc., until his recall to active duty during the Korean War, as a fighter pilot. At the time of his injury, he was a Lieutenant Colonel in the Marine Air Corps Reserve. An examination of the record reflects that he was an alert and intelligent witness whose answers were responsive to the questions propounded.

In the explosion on October 20, 1966, no part of his body was injured except his left leg below the knee; he had no complaints of low back pain at that time; he did not complain of back pain while he was hospitalized, and received no medical attention to any other part of his body. His original claim for compensation mentioned only "lower left leg" and made no mention of any injury to any other part of his body. In fact, plaintiff testified that he inserted the word "lower" preceding "leg" so as to confine the claim to the part of his body which was actually injured. This claim was dated November 25, 1966.

His amended claim, dated February 11, 1969, after he had retained counsel, broadened the claim with these words:

"A steam radiator under pressure exploded and struck me and knocked a piece and I fell down. I have suffered internal damage including adverse effects on my heart and heart damage. This accident caused severe injury to my heart, internal portions of my body, fractured left leg, injury to my back, spine, and other portions of my body."

Following his release from the hospital, he returned to work on June 1, 1967 (some seven months after the accident) on his regular assignment at his regular rate of pay, but says that he was assigned to light work. At the time he returned to work, he said that there was nothing other than his lower left leg giving any trouble; but, as he says: "I was required to stand on the concrete quite a bit more than usual. That's when my back started bothering me."

In February or March of 1968, the light duty restriction was removed and he returned to his full employment status. This he continued until he suffered a heart attack in July, 1968. This seizure occurred while he was manning the sail on his thirty-six foot sail boat in a racing contest upon Lake Sabine. He was off work for thirteen weeks because of the heart attack.

Other than the time he was incapacitated by reason of the heart attack, plaintiff had done his regular work without complaint from his supervisors, had been paid his regular wage therefor, and was on full duty status at the time of the trial.

The fracture of the tibia in his left leg produced a shortening of that leg or what he described as "a medical bow." This affected his back, as is shown by this series of questions and answers elicited from him on re-direct examination:

"Q Does that [the bowing or shortening of the leg; cause you to shift your weight off of your left leg onto your right leg?

"A Yes, sir.

"Q Why?

"A I shift my weight off of my left leg and use my right leg to carry the weight when I am standing.

"Q Because it is painful to your left leg?

"A Yes, sir.

"Q In shifting your weight off of your left leg onto the right leg, due to the pain and due to the shortening that is brought on by that, what effect, if any, does that produce on your hips and back?

"A Well, sir, I am lopsided, more or less. It hurts me in the small of my back.

"Q Do you have to do this all the time?

"A Yes, sir."

Dr. Dickerson, plaintiff's medical witness, testified that he found the bowing in the lower left leg was caused by the fracture of the shin bone and that the left leg was two inches shorter than the other leg. Being asked to explain how the shortening of the leg affected plaintiff's back, Dr. Dickerson said:

"A Well, what has happened here, his left hip has had to compensate for the shortness and what this amounts to is—like someone walking on a walk with their right foot on a ledge two inches higher than the left foot, and the left foot is walking on a ledge two inches lower, and there has to be compensation or he won't stand. In his case it is the left one, the hip compensates for the bending. It is making up the difference in the length and in so doing he puts additional stress and strain to the ligaments and tendons of the low back which produces back pain and will continue to do so; I think it is permanent. I do not see any difference after two and a half or three years. This is not going to change. Whatever—

"Q Then he has a situation there that he is going to have to live with, this disabling pain in his low back, as a result of the shortening of the leg and the pain in the leg and the shifting of the hip—of his weight off of the left leg; is that right?

"A Yes."

Dr. Dickerson demonstrated through the use of x-ray films the existence of a healed compression fracture of the third lumbar vertebra and said that it "occurred at the time of the accident." Plaintiff's testimony, however, fails to furnish a basis for the statement so made by Dr. Dicker-

son as to the time, place, and cause of the fractured vertebra. In fact, upon cross-examination, Dr. Dickerson said:

"A * * * Since it had been thirty months since the accident and when we made these X-rays, *it's logical to assume that it was due to the accident*. But I could not make a qualified statement that it was due to the accident.

"Q We really don't know?

"A No, sir." (Emphasis supplied.)

There is even less evidence to sustain the claim of a compensable disability arising out of his heart attack some twenty-two months after his leg injury. The trial court sustained defendant's objections to plaintiff's testimony that worry and anxiety may have led to his seizure, so that plaintiff's own testimony on the subject was confined to the fact that the seizure occurred on July 4, 1968, three days after he had consulted a physician in Houston with reference to re-breaking and re-setting his left leg.

The hypothetical question propounded to plaintiff's medical witness, Dr. Dickerson, included the following:

"Q * * * Now, Doctor, the evidence here is that this young man has been very active in the United States Marine Air Force, going from a Navy cadet training program to the rank of lieutenant colonel in the Air Force, flying, fighter pilot two years in Korea, and has been very active in his service career. Subsequent to the end of the Korean conflict he has been on the Reserve status. He had gone up to Dallas every month to fly. And, as a result of this injury, it has worried him, he took himself off of the active service because he was incapacitated and couldn't fly. In December of '67 he had been passed over by the selection Board in connection with

a promotion from lieutenant colonel to colonel in the Marine Corps Air Force and it has caused him considerable anxiety and worry.

"Now, on July the 8th, I believe, of 1968, he suffered a heart attack out on his boat. Now, bearing in mind the type of injury he received, the character of the man you have found him to be, the habits that he follows, bearing in mind the career that he had before him in his future, the worry that he has had by virtue of the injury and the shortening of the leg, which is permanent, the pain he has in the leg, and in the back, which you say is permanent, bearing all those factors in mind, have you an opinion based upon reasonable medical certainty as to whether or not the injury he received, the effects of the injury, the knowledge of the effects upon himself, and his future and his future ability to work, and in the Air Force Reserve, the Marine Air Force Reserve, as to whether or not that injury was a producing cause or a contributing and a producing cause of the heart attack he suffered July the 8th, 1968?

"A   I do have an opinion concerning this matter.

"Q   What is it, Doctor?

"A   Well, my opinion is that this event had its beginning with this accident. It is what I think has produced this man's heart attack.

"Q   Then, you would say that his heart attack arose out of his injury?

"A   Yes, sir.

"Q   And is directly related to it?

"A   Yes, sir, I believe that."

In our consideration of the no evidence point with reference to the alleged general injury sustained by Guidry, we have refrained from setting out any of the testimony of the other witnesses in the case who were brought by the defendant insurer. Nor have we commented upon the undisputed fact that plaintiff continues in his regular employment, with apparent ability to discharge his usual duties, and is earning more money than he did at the time of the accident. These are all evidentiary facts which we would be authorized to consider when we reach the points challenging the findings of a general injury upon the basis that the same are against the great weight and preponderance of the evidence, etc. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup., 1965).

We sustain defendant's Point One that there is no evidence of probative value to support the submission of Special Issues One through Five concerning disability arising from a general non-specific injury.[2] Our decision is ruled by Travelers Insurance Company v. Marmolejo, 383 S.W.2d 380, 381 (Tex.Sup., 1964), from which we take this lengthy quotation:

"On the other hand we have stated several times that the claimant must allege, prove and secure a finding that the injury to the specific member extended to and affected other portions of the body. See Texas Employers' Ins. Ass'n v. Espinosa, Tex.Sup., 367 S.W.2d 667; Argonaut Ins. Co. v. Newman, Tex.Sup., 361 S.W.2d 871; Texas Employers' Ins. Ass'n v. Brownlee, 152 Tex. 247, 256 S.W.2d 76; Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463.

2.   Out of an abundance of caution, and in order that our decision on this point will not necessitate a remand to this court in the event the Supreme Court is of a different view, we state that our review of the record as a whole would lead us to sustain defendant's Point Three complaining that the answers to

Special Issues One through Five finding that Guidry sustained total and permanent incapacity from a general injury is so against the great weight and preponderance of the evidence as to be manifestly unjust. See, Garza v. Alviar, supra (395 S.W.2d at p. 823).

It was held in *Espinosa* and *Brownlee*, moreover, that pain caused by an injury to a particular member and felt in another part of the body is not, of itself, sufficient to support a recovery for anything more than the original specific injury. Under our Workmen's Compensation Act as interpreted and applied in these cases, the plaintiff does not establish his right to a judgment for general disability by merely showing that a specific injury has affected the body generally and thereby caused incapacity. He must go further and obtain a finding that his incapacity was caused by an extension of the injury to some part of the body other than a specific member. This was not done in the present case, and we hold that the trial court erred in overruling the first objection mentioned above."

In considering the causal relationship between the leg injury in October, 1966, and the heart attack in July, 1968, we bear in mind Justice Smith's comments to be found in Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, 321 (1955), concerning physical injury resulting from a fright or other mental shock. But, our research has not disclosed, nor have the parties cited any case wherein worry over a broken leg has been held to be the producing cause of a compensable general disability resulting nearly two years later. The relaxed rule with reference to compensable heart attacks [Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.Sup., 1969)] does not appear applicable to the fact structure which we find here. See also, Gorman v. American General Ins. Co., 179 S.W.2d 814, 815 (Tex. Civ.App.—San Antonio, 1944, error ref. w. o. m.). In our judgment, the evidence of a causal connection between the leg injury and the subsequent heart attack is so speculative and weak as to constitute no evidence. Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, 755 (Tex.Sup., 1970).

■ Admittedly, plaintiff sustained a severe injury to his left leg for which he is entitled to be paid compensation, but a specific injury was not pleaded alternatively or otherwise. The manner in which the case was presented to the jury in an effort to parlay the broken leg into a general injury has prevented a clear-cut decision as to the compensation due for his leg injury. Under these circumstances, therefore, we have chosen to follow the course laid down in Aetna Casualty and Surety Co. v. Dooley, 410 S.W.2d 314, 319 (Tex.Civ.App.— Waco, 1966, no writ), wherein the court said:

"In the cases cited,[3] it is a settled rule in Texas that a specific partial incapacity cannot develop into a total permanent injury under Article 8306, Sec. 10, of the Workmen's Compensation Act, as fully explained by our Supreme Court in the Lee case.

"That leads us to say that since there is no evidence of any injury sustained by appellee other than the injury to the right arm, and since we are of the further view that there is no evidence of any total general disability, and being of the further view that the evidence shows, as a matter of law, that appellee had no radiation of pain or involvement of the shoulder, except on use or attempted use of his right arm that the appellee's only compensable incapacity is confined to his right arm. Being of this view, this will require that this cause be reversed and remanded for a new trial in order that the court may fix appellee's compensation for the injury sustained to his right arm. See Aetna Casualty and Surety Company v. Bryant, Tex.Civ.App., 383 S.W.2d 229, (n. w. h.)."

---

3. Liberty Mutual Insurance Company v. Lee, 381 S.W.2d 172 (Tex.Sup., 1964); Texas Employers' Ins. Ass'n v. Espinosa, 367 S.W.2d 667 (Tex.Sup., 1963); Travelers Insurance Company v. Marmolejo, supra; and Texas Employers' Ins. Ass'n v. Brownlee, 152 Tex. 247, 256 S.W.2d 76 (1953).

Because of the views here expressed, and because this cause must be reversed and remanded, further comment upon the other points raised by the defendant would be of no value. The judgment of the trial court is reversed and the cause remanded for a new trial in order that the court may fix plaintiff's compensation for the injury sustained to his left leg. *Dooley Case,* supra.

Reversed and remanded.

STEPHENSON, Justice (dissenting).

I respectfully dissent. The majority is sending this case back to the trial court for the limited purpose of fixing plaintiff's compensation for the injury sustained to his left leg. If this means the trial court cannot consider any extension affecting other portions of plaintiff's body, then it is my contention that there is no good legal authority for such limitation. One case is cited for this proposition. Aetna Casualty and Surety Company v. Dooley, supra. The Waco Court of Civil Appeals, in that case, makes the statement that that compensation case is being sent back for a limited purpose and cites as its authority, Aetna Casualty and Surety Company v. Bryant, 383 S.W.2d 229 (Tex.Civ.App.—Waco, 1964, no writ), another Waco Court of Civil Appeals case in which there is no writ history. A reading of the Bryant Case reveals that the trial court's judgment for plaintiff in a compensation case was reversed and remanded, but no mention is made about any limitation upon the new trial. This compensation case cannot be tried piece-meal. It should be remanded for a new trial generally. Rule 434; Texas Employers' Ins. Ass'n v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929 (1942); Pacific Fidelity Life Ins. Co. v. Simpson, 434 S.W.2d 116 (Tex.Sup., 1968).

In agreeing that the case should be remanded, I prefer the language used by Justice Walker in Argonaut Ins. Co. v. Newman, 361 S.W.2d 871 (Tex.Sup., 1962). In my opinion, the case has not been properly tried, and should be tried again. If plaintiff is to rely upon the injury to his leg extending to and affecting his back or his cardio vascular system, or both, this theory of the case must be properly pleaded and express findings of such extension or extensions secured. I do not construe the opinions in Espinosa, supra; Marmolejo, supra; and Newman, supra, to foreclose recovery for a general disability in this case, if injury to plaintiff's leg, plus an extension to the body generally, is pleaded, supported by the evidence, and jury findings secured.