The AETNA CASUALTY AND SURETY COMPANY, Appellant,

v.

Arthur J. BRYANT, Appellee.

No. 4261.

Court of Civil Appeals of Texas. Waco.

Oct. 8, 1964.

Rehearing Denied Nov. 5, 1964.

Fulbright, Crooker, Freeman, Bates & Jaworski, L. S. Carsey, Houston, for appellant.

Alvis S. Ellisor, Cleveland, Helm, Jones & Pletcher, Houston, for appellee.

TIREY, Justice.

This suit was brought by Bryant to recover workmen's compensation benefits and the jury answered all special issues favorable to him and the court's judgment awarded him a recovery of benefits in a lump sum in keeping with the verdict. Plaintiff went to trial on his original petition. Pertinent to this discussion he alleged that he was working within the scope of his employment for T. E. Mercer Trucking Company and while in the State of Louisiana in the performance of his duties on March 21, 1964, he suffered accidental bodily injuries; that "As a result of the occurrence made the basis of this suit, plaintiff received injuries to his left foot, left ankle and left heel. In this connection it is shown unto the Court and jury that the injuries, and the effects thereof, to his left foot, left ankle and left heel have naturally extended to and affected his left leg and other portions of his body other than his left leg. By reason of his injuries, the left leg is so affected as to substantially and materially impair the use thereof in the practical performance of its functions in the pursuit of a laboring man, so your plaintiff is therefore suffering from total loss of use of his left leg as that term is defined under the Workmen's Compensation law for the State of Texas. The insurance carrier entered a general denial and specially plead that it had paid plaintiff for thirteen weeks disability and the payments terminated when plaintiff returned to work; that if he had any loss of use of his left leg or left foot, or any loss of earning capacity beyond the period for which defendant paid compensation benefits to him, such loss or use or earning capacity was slight and temporary, and that it has long since ceased. Testimony was tendered that plaintiff was injured on March 21, 1961, in Louisiana while unloading a truck of pipe; that a long joint of pipe fell off the rack and hit the ground and bounced against his left ankle; that no other part of claimant's body was injured; that plaintiff was taken to a local hospital where he was x-rayed

and put in a cast from his ankle to his knee; that thereafter he was brought back to Houston, his home, in a company truck and placed under the care of Dr. Roberson, the company physician. Dr. Roberson saw him on March 27, 1961; that the doctor removed the cast from his ankle on May 8, 1961, and released plaintiff for work on June 19, 1961. Roberson testified to the effect that x-rays made by him showed a minor fracture of the left ankle which did not involve the ankle joint; that the ankle had healed when claimant returned to work on June 19, 1961 with no permanent effects; that on August 14, 1961, the claimant returned to Dr. Roberson complaining of some soreness of the left ankle into the left hip. Thereafter, he returned to Dr. Roberson on September 5th of the same year, still complaining of some soreness in his left hip and Dr. Roberson x-rayed the hip on that date and found no abnormalities in the hip; that he saw plaintiff on five occasions after September 5th, the last being December 11, 1961, when he found claimant to be doing "all right" and dismissed him from his care. Plaintiff testified in part with reference to his injuries:

"Q. * * * and tell them whether or not you were well and your ankle had been cured up when you went back to work for your employers?

"A. No sir, it was not.

"Q. Was it hurting you?

"A. Yes Sir.

"Q. Was it hurting you much or little?

"A. It would hurt when I'd drive a long ways, my leg hurt and my hip.

"Q. All right, now—

"A. From my ankle to my hip.

   *    *    *    *    *    *

"Q. Now you said the pain, you say the pain goes from where?

"A. From here up (indicating).

"Q. Up to your hip?

"A. Yes Sir.

\* \* \* \* \* \*

"Q. What happens when you work and walk around on it for any length of time there Arthur?

"A. Well it hurts and hurts up to my hip.

\* \* \* \* \* \*

"Q. This pain that you are telling us now, this pain in your ankle, you say you have there, goes up your leg to your hip?

"A. That's right.

"Q. Now is that when you step on something that it goes up your leg?

"A. Well, I will be driving or standing or walking a long time or drive a long time, and it does that.

\* \* \* \* \* \*

"Q. So it is just a pain that starts in that ankle when you are standing on your ankle?

"A. Yes, sir, that's right and at night if I work real hard it wakes me up cramping.

\* \* \* \* \* \*

"Q. All right, what happens to your leg, if anything, when you have worked a full day's work?

"A. It cramps when I go to bed at night, I get cramps in my leg and hip and I cannot rest.

\* \* \* \* \* \*

"Q. You may not have understood my question. The accident happened in March, and you said you went back to work in June, now, please tell us when you first had any of this difficulty with the pain going from your ankle to your hip?

"A. Well, when I was driving a long ways it—."

The jury in answer to Issue (1) found that the injuries to appellee's left ankle had extended to and affected his left hip. Appellant's first contention is that the jury finding that the injury to appellee's left ankle extended to and affected his hip is without any support in the evidence, and contends that there is no evidence in the record to support the finding. Its second point is to the effect that the evidence is insufficient to support the answer of the jury to such issue; and the third point is to the effect that such answer is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. It is appellee's position that the following testimony of claimant supports the jury's finding to issue (1):

"Q. Does this pain that you have in there that goes from your ankle to your hip, does that hurt when you try to use that ankle?

"A. When I walk a long time or when I sit driving—and at night I go to bed at night and my leg cramps.

"Q. Does that happen whenever you have used the ankle?

"A. If I use it a right smart in the day, at night it cramps.

"Q. It does not bother you in the daytime though?

"A. It bothers me all the time when I stand on it a long time.

"Q. Does it happen only when you use your ankle that the pain goes up to your hip?

"A. To my hip, to my knee and my hip.

"Q. Does that happen only when you use your ankle?

"A. If I work hard and all it does that, and I go to bed at night and it wakes me up at night."

Appellee also relies on the following testimony of Dr. Roberson to sustain the jury's answer to Issue (1).

"Q. Did you see him again after that?

"A. Yes, Sir, he came back approximately two months later, on August 14, 1961. He came back and complained of some soreness on the left ankle into his left hip, but was working and doing fine when working, and he came back September 5, still complaining of some soreness in his left hip, so I x-rayed his left hip.

"Q. What did the x-ray reveal?

"A. They were normal, they didn't reveal any abnormalties at all.

"Q. Did you see him again after that?

"A. Yes, sir, he came back about two weeks after that, on September 20, and he was still working then and doing fairly well. He still complained at that time of some soreness and I gave him some medication to help relieve that, and he came back on October 9, and was doing well then, and I saw him again October 30 and dismissed him from any further treatment, and I saw him again December 1, complaining of his left hip pain.

"Mr. Helm: What was that date?

"A. December 1, complaining of his left hip, and I gave him some medication and tried to relieve that, and I saw him again ten days later, December 11, and at that time he was doing all right, and I dismissed him from any further treatment with instructions that if he had any further difficulty to return, but I haven't seen him since.

"Q. On December 11, was he having —did he have any complaints that time when you dismissed him —did he have any complaints at that time of any pain in his body?

"A. No, sir, I don't believe so.

"Q. Was he complaining of any thing that you felt required further treatment?

"A. No, sir.

"Q. Was he, at that time, in your opinion, healed or not?

"A. Yes, sir, I thought he was.

"Q. Now, do you have an opinion as to whether, when you saw him last on December 11, is this opinion based on reasonable medical certainty, if on December 11, he had any physical disability in his ankle or any other part of his body that was traceable to the injury of March—

"A. It was my opinion, at that time, that he had no permanent disability.

"Q. Did you have an opinion at that time, and do you now, if he was able to do the regular work that he had been doing before?

"A. Yes, sir, he was working at that time, and I thought that he was able to work.

"Q. Have you seen him since?

"A. No sir."

With reference to the foregoing testimony appellee says:

"This testimony was analyzed by the jury in light of the testimony given by the appellee that his leg and hip hurt when he drove a long ways; that it hurts up to my hip; that he had not been able to do regular work of long haul driving; that he could not make these long hauls because my leg and ankle hurt; that he is not in good sound physical condition nor getting better and that he has not improved in the last year. The jury viewing the testimony of this man, age 35 at the time

of the trial, chose to believe the appellee, and discredited the testimony, claimed to be unfavorable, given by the doctor for the insurance company."

We think it pertinent to point out the following testimony of Dr. Roberson elicited by claimant on cross-examination:

"Q. Now then have you had an opportunity to see this man when he has tried to put in a hard days work, and then see his foot afterwards, and his leg?

"A. Yes sir, I saw him several times after he went back to work. In fact he went back to work in June, on June 20th, I believe, and I saw him periodically after that for several months, approximately six months. I saw him then December 11, and he was still working, and I could not find any objective evidence. I havn't seen him since then though. That was the last time. I could find no evidence that his injury had not healed.

\*     \*     \*     \*     \*     \*

"Q. And do your records reflect and show on each of these visits that he returned and complained of pain and was complaining of pain up into his left hip and you finally x-rayed his left hip, is that correct?

"A. I x-rayed his left hip on his second complaint. The first time with complaints of hip pain was August 14, and I examined him and found no physical evidence of any injury to this hip at that time, so he returned on the 5th of September and was still complaining of some hip pain so I x-rayed it and I didn't find any x-ray evidence of anything in the hip that could be causing his pain."

Our view of the entire record is that there is no evidence of any limp as a result of the ankle injury, nor of restricted motion of the ankle, nor of swelling in the ankle or hip, nor of atrophy of the ankle, leg or hip, nor of nerve damage in the ankle, leg or hip, nor of any other medical or physical condition that could account for pain going from the ankle up to the hip or for cramps in the leg and hip. The only evidence in the record of pain extending from the left ankle into the left hip is that of claimant. Testimony was tendered to the effect that claimant had advised with another physician, but he was not called as a witness and no explanation is shown as to why such physician was not called to testify.

In Argonaut Insurance Co. v. Newman, S.Ct., 361 S.W.2d 871, we find this statement:

"When an injury is confined to a specific member, the amount of the recovery is determined by the extent to which the claimant has lost the use of that member. If an injury to a specific member extends to and affects the body in general, the crucial inquiry is whether such extension has caused incapacity. The fact that a specific injury in itself may disable the claimant is immaterial."

We have carefully read the Statement of Facts to see if there is any evidence of probative force to sustain the jury's finding to Issue (1), and each of the other findings in the verdict wherein the jury found substantially that the injury to plaintiff's left ankle had extended to his left hip so that it had resulted in his permanent, total general incapacity, and we have found none. In so doing we have constantly kept in mind that we must consider only the evidence which would sustain the jury's findings and disregard all other evidence and, at the same time, bear in mind that the burden of proving that the specific injury extended to and affected other portions of the body so as to result

in general injury rested upon the claimant. We think he failed to carry this burden.

■■ The factual situation here is ruled by the pronouncements of our Supreme Court in Texas Employers' Ins. Assn. v. Espinosa, 367 S.W.2d 667, (points 1, 2, 3 and 5) and cases there cited. The Court held:

"* * * that a specific partial incapacity cannot develop into a general incapacity under Art. 8306, § 10 of Workmen's Compensation Act, when the disabling incapacity consists of pain and dizziness and results solely from using or attempting to use an eye or other member of the body for which specific compensation is provided by Article 8306, § 12."

That is the exact situation here. The Court then refers to and quotes from an opinion in Coleman v. Hartford Acc. & Ind. Co., Tex.Civ.App., 297 S.W.2d 236, writ ref. In that case evidence was tendered to the effect:

"* * * that whenever claimant attempts to work, the use of his injured arm results in pain therein which extends therefrom into his whole body, particularly into the shoulder and upper part of his back and his neck, causing him to be unable to perform the character of labor involved in his employment. It is therefore believed that a proper disposition of the case depends upon the correct answer to the following question:

"Quare: Where a claimant under the Texas Workmen's Compensation Act sustains an injury to a specific member mentioned in Section 12 of Article 8306, V.A.T.S., and such injury results in a percentage of permanent partial loss of use of such member, may he recover compensation for future general incapacity occasioned as the result of pain incident to any attempted utilization of the member's remaining use, such pain originating in the injured member and extending to and affecting other portions of his body?

"Answer: No."

We think the factual situation here is very similar to the factual situation in the Espinosa and Coleman cases, supra, except the injuries here are far less severe. In the case at bar it is appellee's contention that the injury sustained to his left ankle extended to and affected his hip, and we have previously set out all the testimony which we believe is pertinent to the appellee's contention. We are of the view that appellee failed to carry his burden of proof and show that the specific injury to his left ankle extended to and affected his hip, and that it resulted in general disability or a general injury. See Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463; Texas Employers' Insurance Association v. Brownlee, 152 Tex. 247, 256 S.W.2d 76. The same rule was applied in the Espinosa case. It is our view of all the testimony that there is no evidence of probative force which causally links Bryant's alleged pain from his ankle up to his hip to a source other than the injury to his left ankle and his attempts to use his left ankle in its impaired condition. This view brings claimant's cause of action within the rule announced in the Espinosa and Coleman cases. Moreover, there is no medical testimony that the injury to his left ankle had affected his left hip. The only medical testimony in the record is that his hip was x-rayed and no objective evidence connecting the pain in the hip with the injury to the left ankle or any other source was found. It is true that appellee complained of pain from the ankle to the hip when he attempted to use the ankle, and this claim was made about five months after the injury to his ankle. We are of the view that the evidence we have quoted on the question of hip pain is not evidence of the extension of the specific injury so as to affect the body generally; that there is no evidence in the record to support the finding of the jury that it did. In the Espinosa case the jury found that an injury to Espinosa's left eye

which required surgery extended to and affected his head and body generally, thereby resulting in incapacity. It is true that Espinosa complained of headaches, pain and dizziness. The operating surgeon found no physical objective evidence connecting the headaches and dizziness with the injury to the left eye or any other source. He did say that possibly some damage to the motor nerves controlling the left eye could cause headaches, but that in order to determine whether or not this was the case it would be necessary to perform an exploratory operation. In the Espinosa case the Court said:

"Specific injuries like all bodily injuries have their painful aftermaths and like undesirable consequences, but mere proof of this is insufficient in law to show an extension of a specific injury."

It is our view that upon authority of the Espinosa case, that appellant's point (1) must be sustained. If we are mistaken in the foregoing view, and if there is a scintilla of evidence to support the submission of special issue (1), we are of the further view that the answer of the jury that the injury to appellee's left ankle extended to and affected his left hip, is so contrary to and against the overwhelming weight of the evidence as to be manifestly wrong and unjust, and the evidence is not sufficient in law to support it. See Liberty Mutual Ins. Co. v. Lee, S.Ct., 381 S.W.2d 172. See also Indemnity Insurance Co. of North America v. Cady, 356 S.W.2d 323, n. w. h. In the Lee case, supra, the claimant sustained an injury to his left knee, and the injury was such that it required an operation and after that his knee and leg swelled up and it would do so after he worked for a few hours and he testified that a small place in his back would hurt; that his condition was such that he could not get any sleep at night. On the verdict of the jury he was awarded 401 weeks' compensation. It is true that he did not plead that the injuries he sustained extended to and affected other parts of his body, and no issues on this were requested nor submitted. There was medical testimony to the effect that the claimant's knee condition was permanent, but the evidence was without dispute that he was still working; that the doctor said that he could use the leg, but that the whole leg was involved, but that the claimant was not totally disabled. We think it is significant in that case that the Court made the following statement:

"We find no evidence that would justify the recovery for total, permanent disability and its resulting incapacity."

It is without dispute that Bryant quit the Mercer Trucking Company because of suspected health problems not related to the ankle injury, and after doing so obtained a job driving a truck for Walter Mischer after he had passed a physical examination. He retained that job until he quit because of weather, and a little later obtained a job at Younger Brothers Trucking Company after passing an ICC physical and stayed on that job until he quit because the work was slow. He later obtained a job in Odessa with a well servicing outfit and retained it until he obtained a better job with Louie Montgomery Trucking Company, and kept this job until the time of the trial and was still employed with them. Our view of the record is that it shows that Bryant missed no time from work because of injuries after being discharged by the treating physician. He did not complain of a limp or limited motion in his ankle or any other part of his body. Nor did he have any swelling in his ankle or leg or hip. We find no evidence in the record of any disabling physical condition, except the statement of Bryant that when he worked a full day, using his ankle, he had pain from his ankle to his hip and would have cramps. As we have stated above, it is our view that there is no evidence to sustain the jury's answer to special issue (1), nor that claimant sustained permanent injuries that resulted in total permanent and general incapacity to him, and if we be mistaken in that view, that under all the evidence submitted, the answer of the jury thereto is against the great weight and preponderance

of the evidence, and that this view will require that the cause be reversed and remanded. See King v. King, 150 Tex. 662, 244 S.W.2d 660; 30 T.L.R. 805.

Under this view of the case, the other points pass out of the case, and in view of another trial we pretermit further discussion of them.

Accordingly, the cause is reversed and remanded.