**EXPORT INSURANCE COMPANY,**
Appellant,

v.

**Lemuel JOHNSON, Appellee.**

No. 7579.

Court of Civil Appeals of Texas.

Amarillo.

March 7, 1966.

Rehearing Denied April 11, 1966.

Albert Smith, Lubbock, for appellant.

Wagonseller & Cobb, Lubbock, for appellee.

DENTON, Chief Justice.

This is a workman's compensation case in which Lemuel Johnson recovered a judgment against the Export Insurance Company for total and permanent incapacity as a result of a jury verdict.

Appellant first contends the trial court committed reversible error in permitting claimant's attorney to inform the jury of the number and amount of compensation payments recoverable under the Workmen's Compensation Act under a total and permanent finding. Appellant's motion in limine, asking that this information not be referred to before the jury was overruled by the trial court. On voir dire examination of the jury panel, plaintiff's attorney stated the plaintiff was suing for the sum of $35.00 per week for 401 weeks. Appellant then moved for a mistrial, but

the motion was overruled. Plaintiff's petition containing the same allegations was read to the jury and the plaintiff's attorney alluded to the same matter on two occasions in the argument to the jury. No objections were made when those pleadings were read or when the statements were made in the jury argument. A motion in limine is not a necessary predicate for complaint on appeal that the admission of the evidence pointed out was error and that the error was prejudicial. Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366. The Supreme Court in Hartford Accident and Indemnity Company v. McCardell, 369 S.W.2d 331 had this to say about the holding in the *Bridges* case: "It seems that the converse of our holding in the Bridges case is that although the overruling of a motion in limine may be error, it is never reversible error." We cannot say appellant's motion for mistrial was sufficient to serve as a continuing objection when the same matter was offered during the trial. In the absence of proper objection at the time the evidence was offered, the error is not a reversible error.

Appellant cites Texas Employers' Insurance Association v. Poe, 152 Tex. 18, 253 S.W.2d 645, for the holding: "It is the better practice not to read to the jury those portions of the pleadings with which the jury is not concerned." The court did not reverse the case on this ground and no case had been cited which has declared such an error to be reversible.

Appellant urges, in anticipation of appellee's contention that the matter complained of was "harmless error", that the injection of the number and amount of compensation payments recoverable into the record four times by claimant's attorney conclusively shows it to be harmful to the defendant. This argument might have some force if it were not for the fact the matter complained of was brought to the attention of the jury in compliance with the trial court's ruling. The court had overruled the motion in limine and the motion

to declare a mistrial. Regardless of the propriety of the "better practice" of not reading such pleadings to the jury or otherwise bringing the matter to their attention, we must still be guided by the rule that such error, if any, is not reversible in the absence of a showing of harm. We must follow the rule that no judgment will be reversed on appeal unless the error complained of amounted to such a denial of appellant's rights as was reasonably calculated and probably did cause the rendition of an improper judgment in the case, Rule 434, Texas Rules of Civil Procedure. Numerous cases have held under the records there presented, it was not reversible error to mention or refer to the amount and number of compensation payments recoverable under the Workmen's Compensation Act. St. Paul Fire and Marine Insurance Company v. Escalera (Tex.Civ.App.) 385 S.W.2d 477, 479 (Ref. N.R.E.); Texas Employers' Insurance Association v. Charles (Tex.Civ.App.) 381 S.W.2d 664 (Ref. N.R.E.); Texas Employers' Insurance Association v. Rubush (Tex.Civ.App.) 337 S.W.2d 501 (Ref. N.R.E.); Argonaut Insurance Company v. Titus (Tex.Civ.App.) 347 S.W.2d 372; Texas Employers Insurance Association v. Jackson (Tex.Civ.App.) 366 S.W.2d 599 (Ref. N.R.E.); Texas Employers' Insurance Association v. Logsdon (Tex.Civ.App.) 278 S.W.2d 893 (Ref. N.R.E.). After viewing the whole record we cannot say that but for the error a different verdict or judgment would probably have been rendered. Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277. Appellant's first point of error is overruled.

Appellant next asserts the jury finding of total and permanent disability is against the great weight and preponderance of the evidence. A review of all the record is required. Lemuel Johnson, a filter press cleaner for Paymaster Oil Mill Company in Lubbock, Texas, was injured on April 24, 1964. He was putting a pipe together and was tightening a bolt when the 15-inch forged steel wrench he was using slipped from the bolt and struck him across the nose. His nose bled profusely that afternoon and he complained of severe headaches, dizzy spells, a blurring of vision, hurting in the back of the neck and across the top of the shoulders and the left arm. Dr. Cobb, a company doctor, examined him three days later. Johnson was hospitalized from April 27 until May 14, 1964. X-rays were taken of the cribriform plate and the ethmoid sinuses, and they revealed a fracture of the ethmoid plate. Evidence of bloody and watery discharge from the patient's nose and mouth was "suggestive of spinal fluid". The ethmoid plate was described as being separated from the brain by three layers of meninges which forms a sac full of spinal fluid. Dr. Cobb's diagnosis was that the plaintiff had a leaking of cerebrospinal fluid through the meningeal area. Dr. Cobb, a general practitioner, immediately referred plaintiff to a neurosurgeon, Dr. William Evans, who agreed with Dr. Cobb's diagnosis. Treatments consisted of two spinal taps to reduce pressure in the head and medication to prevent infection. He was referred by Dr. Evans to Dr. Mayes, an orthopedic surgeon, who treated plaintiff from July to September, 1964 for his neck and back. Dr. Mayes prescribed additional medication and physical therapy. On August 26, Dr. Evans wrote a letter stating the plaintiff could return to work if Dr. Mayes did not advise otherwise. Dr. Mayes was of the opinion plaintiff was able to return to work "as far as his neck was concerned". Johnson did not return to his job with Paymaster Oil Mill but in the latter part of November, 1964 he worked for two days for the Texas Planting Seed Association. He testified he was unable to continue the work because: "I started back to bleeding. And my nose started to bleeding and that drainage started coming out through my mouth again and my back got back sore again". He then returned to Dr. Evans for another examination. Johnson testified Dr. Evans told him: "Not to try to do that kind of work no more", and then sent Johnson to Dr. Healy, an eye, ear and nose spe-

cialist. The latter prescribed glasses for Johnson for his blurry vision and headaches. Except for picking cotton for a short time one afternoon in the fall of 1964 and for working 1½ days on a construction job approximately one month before the trial, Johnson had performed no other work since receiving the injuries complained of. Prior to the injury, it is uncontradicted Johnson had worked regularly for Paymaster Oil Mill for some 23 months and he testified that prior to his injury in April, 1964 he had had no difficulties with his back, neck or headaches and had not experienced nasal drainage or faulty vision. In fact he described his physical condition prior to the injury as being in "perfect health". Lay witnesses, including a fellow employee and plaintiff's wife, testified to his inability to work. Johnson testified the condition of his back and neck were about the same at the time of the trial and that he continued to have periodic severe headaches; and that dust and heat prevented him from doing the "type of work I used to do". Although the treating doctors conceded the plaintiff had received a serious injury, they testified that he had recovered and he was physically able to perform the usual tasks of a workman.

The absence of medical witnesses testifying to claimant's total and permanent disability is not decisive. It is well settled in this state that total and permanent disability may be reasonably inferred from circumstantial evidence produced by lay witnesses, even though contradicted by medical experts. Travelers Insurance Company v. Arnold (Tex.Civ.App.) 378 S.W.2d 78 and Travelers Insurance Company v. Wade (Tex.Civ.App.) 373 S.W.2d 881 (Ref. N.R.E.) and cases cited therein. When we review the record and testimony as a whole, we cannot say the finding of total and permanent incapacity of the plaintiff is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. This holding necessarily overrules appellant's contention that the finding of total and permanent disability is grossly excessive by at least 250 weeks.

Appellant's last point urges error in the refusal of the trial court to submit appellant's requested special issue inquiring if Johnson's present incapacity was not caused solely by conditions which existed prior to the accident of April 24, 1964. Rules 277 and 279, Texas Rules of Civil Procedure, require the submission of affirmative defenses only where there is evidence raising such issue. The only evidence tending to show a condition which may have caused Johnson's disability other than the injuries sustained on April 24, 1964, was the testimony of one of the doctors that x-rays taken three days after the April injury showed a small amount of calcification within the soft tissue behind the spinous process at the fifth cervical vertebra. Obviously, this "very small calcium deposit" was present before the injury complained of, but the same doctor testified the calcium deposit "would be of very little, if any, significance, probably of no significance". None of the medical witnesses testified that Johnson's incapacity was caused solely by conditions which existed prior to the injury in April, 1964. We therefore conclude the evidence was not sufficient to raise the issue requested.

The judgment of the trial court is affirmed.