**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Raymond John POLASEK, Appellee.**

No. 15580.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 19, 1970.

Rehearing Denied March 12, 1970.

Tom M. Davis, Jr., Wm. M. Holland, Jr., Houston, for appellant; Butler, Binion, Rice, Cook & Knapp, Houston, of counsel.

Krist & McConnico, Kenneth D. McConnico, Houston, for appellee.

COLEMAN, Justice.

This is a workman's compensation case. A trial before a jury resulted in a judgment awarding appellee benefits for total and permanent disability.

Appellant contends that the court erred in failing to include in his charge an issue designed to establish that appellee sustained a general injury since it was undisputed that he had sustained the loss of an eye.

Appellee alleged that he sustained injuries to his right eye, left eye, and arm; that he sustained an injury to his head, including the brain, nerves, nerve supply and supporting attachments. He alleged that the injury resulted in total disability as that term is defined in the Workmen's Compensation Act, as well as in the loss of his right eye.

Appellant plead a general denial, followed by the allegation that appellee has suffered no incapacity or disability except for loss of vision of the right eye, and that any other alleged incapacity or disability of appellee is caused solely by the loss of vision of the right eye. Appellant also alleged that it had paid appellee workmen's compensation benefits and that such payments would continue until appellee had received the benefits provided by law for the total and permanent loss of use of the right eye.

The record reflects that on October 6, 1969, an instrument was filed in the cause reading:

NO. 753,644

| | |
|---|---|
| RAYMOND JOHN POLASEK | |
| VS. | IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS |
| TEXAS EMPLOYERS' INSURANCE ASSOCIATION | 152ND JUDICIAL DISTRICT |

"BE IT REMEMBERED that on the 25th day of March, 1969, in open court, the following stipulations were tendered by the Defendant and accepted by the Court.

## STIPULATIONS

"(1) Wage rate of $145.00 per week
(2) Course and scope of employment
(3) Accidental injury
(4) Lump sum

Approved:

/s/ John Snell, Jr.
Judge Presiding"

———◆———

While appellant's suggested sitpulations are not precisely worded, they establish that appellee received harm or damage to the physical structure of the body by reason of an undesigned, unforeseen, or unexpected occurrence or mishap. It is undisputed that while appellee was looking through a glass window into a pressurized tank, the window blew out. Pieces of glass hit him in and around the right eye. The back of his head hit a liner. He was not knocked down or rendered unconscious. He was taken to a doctor, who sent him to a hospital. There an ophthalmologist removed his right eye and the pieces of glass. He remained in the hospital for ten days. Later he was fitted with an artificial eye.

Appellant contends that neither the stipulations nor the testimony established that appellee received a general injury in addition to the specific injury to the eye.

In answer to the special issues submitted the jury found that "the injury" was a producing cause of the total incapacity, which began on August 30, 1967, and was permanent. They found that the incapacity was not caused solely by the loss of use of the right eye. The court instructed the jury that in determining whether or not appellee "has sustained any disability, partial or total, as those terms have been herein defined, you are not to take into consideration the affects of Mr. Polasek's loss of vision in his right eye or base any finding on such loss of vision." There was no definition of "partial disability," "total disability," or "disability." Definitions of the terms "partial incapacity" and "total incapacity" were included in the charge.

Appellant objected to the charge for the failure to submit an issue for the purpose of determining whether appellee had sustained an injury to a portion of his body other than the eye. While the court instructed the jury that in determining whether appellee had sustained any disability they should not consider the loss of vision, and had required appellee to establish that his incapacity was not caused solely by the loss of use of the right eye, no issue was submitted to establish the part or parts of the body injured.

Appellee alleged that he received a general injury. He also alleged an injury resulting in the loss of his right eye. Appellant has admitted loss of the right eye and has voluntarily paid the compensation provided by the Workmen's Compensation Act for such an injury. The parties did not stipulate that appellee had received a "general injury" rather than a "specific injury."

■ The trial court did not err in failing to submit an issue to determine what part of appellee's body was injured. The purpose of the trial is to determine whether the employee sustained an accidental injury to his body in the course of his employment and the extent of the incapacity resulting therefrom. Maston v. Texas Employers' Insurance Ass'n, 331 S.W.2d 907 (Tex.1960); Employees Lloyds v. Schott, 183 S.W.2d 262 (Tex.Civ.App.—Dallas 1944, error ref.). Since accidental injury in the course of employment is stipulated, appellee's primary burden is to establish general incapacity resulting therefrom.

The stipulation dispensed with the necessity of producing evidence that appellee's scalp was lacerated or that a swelling immediately resulted, or some other such circumstances which might have shown clearly that damage or harm to the physical structure of the body resulted from the blow to his head.

There is evidence that when the window blew out pieces of glass hit appellee in or around his right eye. The pieces of glass and the right eye were removed shortly after the accident. There was no direct testimony that the blow to the back of appellee's head caused harm or damage to the physical structure of his body. Appellee testified that after the accident he was semiconscious and bleeding. He remembered going to the first aid station, the Wayside Clinic, and finally to the hospital. He did not describe his symptoms during that period of time. About six hours after the accident he was taken to surgery and thereafter remembered nothing until the next morning.

On the second or third day after surgery his left hand and two fingers began hurting and felt numb. The pain extended into his arm and felt like someone was sticking him with a pin. He had headaches which he attributed to the surgery. He had stitches in his nose and around his eye. He was in the hospital ten days. He had "awful headaches" when he got home. His eye was draining. His hand and arm continued to hurt. Two of his fingers are still numb. He still has headaches. When he has headaches he gets dizzy and has a ringing sensation in his ears. This occurs once

or more a week depending on the weather. Every time the weather changes his head swells up. He gets tired quicker now than before the accident. His condition is not improving.

In explaining the difficulties he experienced when he returned to work, appellee testified:

"Oh, it happens, you know, with one eye—like you are around something—in a real tight place you *bumb* your head because you can't see and with one eye— especially you are going to have to—you are welding and you look at it one way and you can't judge the distance and say, I am drilling a hole in some metal, and I might be a half inch off where I drill my hole from where I have it center punched and I think I am far enough away from something but I just might touch it."

He did not become tired before the injury while working an eight hour day, nor did he have headaches or trouble with his hand and arm. Nevertheless he returned to work about two and a half months after the accident. One of his fellow employees assists him with heavy work. He is a millwright and his work involves such things as moving and installing machinery, welding and running pipe, making ducts and installing them in the ceilings. He had no trouble doing this work before the accident, but has experienced difficulty in doing it since the accident. He can't sit down and rest while at work. His pay has increased from $3.71 an hour at the time of the accident to $4.17 an hour at the time of the trial. He does some overtime work, usually on Saturday.

Billy Umfried, a fellow employee of the appellee, testified that appellee was injured in the accident. He saw blood all over appellee's face. He testified that appellee was a good worker and never made any complaints about his physical condition before the accident. He was able to do high work, close work, and heavy work before the accident. He has observed that since the accident appellee "seems to give out pretty easy." He can't do close work. Umfried testified that he was afraid for appellee to do high work for fear of another accident. He explained that he had tried walking down the hall with one eye closed and that he "wouldn't want to get up in a situation and walk around with one eye." He testified that appellee is not as good a millwright as he was before the accident and in explanation of this statement testified:

"He can't weld like he used to; he can't see—he can't run no air hammer very long, he can't do no climbing—we build lots of *shoots* for ink to run into out there and they are real thin and he used to be good at that but he can't build one now—it has to be real close."

Appellee's wife testified that when she arrived at the hospital his *hand* was bandaged up and his eye was bleeding—just soaking through." When he was able to return home he was "real upset and nervous—very timid and wouldn't even go outside and speak to the neighbors—his head was ringing and had dizziness and his hand hurted him and everything hurt him * * " After he returned to work he had similar complaints. His condition does not seem to have improved. He appears to be getting worse. He is fatigued when he gets home from work.

Appellee's foreman testified that appellee had made no complaints to him. He said that appellee was a very capable worker; that light duty was available, but that appellee had not requested it. He said that appellee was not required to work overtime, but that lately he had averaged eight to twelve hours overtime each week. He testified that appellee was not a complainer by nature. It was his opinion that if an employee complained three times a week that he, the employee, gets dizzy and cannot do high work, that he cannot do heavy work, or close work, that he can't weld properly, and is exhausted at the end of the day, such an individual would not be doing the usual and customary tasks of a workman at American Can Company.

Dr. John Skogland, a neurologist, had examined Mr. Polasek at the request of the appellant. He testified that appellee told him about the eye injury, but did not mention the blow to his head. Appellee told him that he had right frontal headaches initially, but that the headaches had disappeared. On examining appellee he found that he had an artificial right eye. The vision in the left eye was all right. The other nerves that come off the brain—the cranial nerves that go to the face—functioned normally. The reflexes were normal. He had no muscle weakness, and his coordination was good. He did not sway when he stood with his eyes closed and his heels together. Other tests were normal. The doctor found no evidence of neurological injury. Based on the history given him and the result of his examination it was the doctor's opinion that appellee should be able to continue all of his usual occupational pursuits except to the extent that he is handicapped by the loss of vision in his right eye. He testified that dizziness, impairment of vision, easily becoming tired, noises and ringing in the ear, and inability to concentrate can be symptoms of a post-concussion syndrome. He did not think that the ringing in appellee's ears, the dizziness, the headaches, or the numbness in the hand and arm were caused by a blow to his head.

Appellant urges that there is no evidence that appellee sustained an injury other than the injury to his right eye; that there is no evidence that appellee's complaints were caused in whole or in part by a general injury; that there is no evidence that appellee is either totally or permanently incapacitated at a time relevant to this suit; and that the jury finding that appellee is totally and permanently disabled is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong.

Appellee produced evidence that he sustained a blow to his head; that since the accident, but not before it, he fatigues easily, suffers from dizziness, ringing in

his ears, headaches, and numbness in his hand and arm. There was no direct injury to the hand or arm. In the absence of the circumstance that he also suffered an injury to his right eye resulting in the loss of all vision in that eye, there would be little doubt that there is evidence that the injury to the head resulted in the symptoms causing disability. Findings of total and permanent disability may be based on circumstantial evidence. Export Insurance Company v. Johnson, 401 S.W.2d 324 (Tex. Civ.App.—Amarillo 1966, error ref., n. r. e.); Traveler's Insurance Co. v. Arnold, 378 S.W.2d 78 (Tex.Civ.App.—Dallas 1964); American General Insurance Co. v. Florez, 327 S.W.2d 643 (Tex.Civ. App.—Houston 1959).

However, there are situations where medical testimony is required to establish a causal connection between the injury suffered and the claimed disability. Insurance Company of North America v. Kneten, 440 S.W.2d 52 (Tex.1969).

In the Kneten case the question was whether there was a causal connection between an electrical shock and a heart attack. There distress promptly followed the shock. The only medical witness testified that the shock could have precipitated the heart attack.

"Since the question is what precipitated *this attack at this time*, it requires no expert to decide the probabilities when the trier of fact is given evidence of prompt onset of the attack following an occurrence competent to affect adversely a defective heart. As in all of those cases where a back injury promptly follows a lifting strain, or a ruptured blood vessel or heart attack promptly follows exertion, though there is not definite proof of the mechanical process by which the physical structure of the body is damaged, under the circumstance it is reasonable to believe that what the employee did on the job precipitated physical failure. The courts have often allowed this finding and permitted recovery under

the Texas Workmen's Compensation Law. Carter v. Travelers Insurance Company, 132 Tex. 288, 120 S.W.2d 581 (Tex.Sup.1938); Texas Employers' Insurance Association v. Hamilton, 430 S.W.2d 285 (Tex.Civ.App.1968, writ ref'd n. r. e.); Lambert v. Houston Fire & Casualty Ins. Co., 260 S.W.2d 691 (Tex. Civ.App.1953, writ ref'd n. r. e.).

"However, we must now consider the effect of the doctor's testimony on this issue of causal connection. In doing so, we must recognize that there are areas for jury and judge to construe the testimony of the doctor. As the court said in the Myers [Insurance Co. of North America v. Myers, Tex., 411 S.W.2d 710] opinion at 411 S.W.2d 713: 'Reasonable probability * * * is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase.' Furthermore, we must distinguish the question as to the legal sufficiency of expert testimony standing alone on the issue of cause, from the question of the effect of that testimony upon other evidence which would itself be sufficient proof on that issue. The question for us is whether the testimony of the doctor is so adverse to the existence of probable cause as to overcome the weight of the circumstantial evidence."

The court said that the testimony of the doctor did not rule out a medical relation between the work occurrence and the attack, nor negate the reasonableness of the finding of causal connection, and finally held that the jury was entitled to conclude as to probability based on all the evidence in the case.

The Supreme Court also reviewed several cases in which medical testimony was required and concluded that the plaintiffs failed to recover "not so much for lack of a certain phrase of testimony from a medical expert" as because the total proof was inadequate to support their claims.

The courts have frequently held that a recovery for total and permanent disability cannot be sustained where the proof shows only a specific injury in the absence of pleading and proof that the injury extended to and affected other parts of the body or the general health of the employee. General Accident Fire and Life Assurance Corp., Ltd. v. Murphy, 339 S.W.2d 392 (Tex.Civ.App.—Houston 1960, error ref., n. r. e); Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463 (1943). They have held that where pain or disability is caused solely by an injury to a member of the body compensable under the specific injury provisions of the Compensation Act, the employee cannot be compensated for his resulting disability under the general provisions. Denbow v. Standard Accident Insurance Company, 143 Tex. 455, 186 S.W.2d 236 (1945); Coleman v. Hartford Accident and Indemnity Company, 297 S.W.2d 236 (Tex.Civ.App.—Ft. Worth 1957, writ ref.).

It has also been held that where an employee sustains a general injury resulting in disability confined to a specific member for which special compensation is provided by the Act, he cannot recover for a general injury. Brown v. Trans-America Insurance Co., 416 S.W.2d 902 (Tex.Civ.App.—Tyler 1967).

■ An employee suffering both general and specific injuries can be compensated for the cumulative effect of all the injuries. Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73 (1953); Texas Employers' Insurance Association v. Yother, 306 S.W.2d 730 (Tex.Civ.App.—Ft. Worth 1957, error ref., n. r. e).

In the case before us the employee has not plead extension of a specific injury, and has made no objection to the court's instruction to the jury that in determining issues concerning disability, the jury should not take into consideration appellee's loss of vision.

The question, therefore, is whether *the nature of the injury to appellee's head* followed, after intervention of surgery to the eye, by headaches, dizziness, swelling of the head, and excessive tiredness, is of sufficient probative force to support the inference of fact that the blow was a producing cause of these symptoms and the resulting disability. Furthermore, the question must be considered in light of the testimony of Dr. Skogland. His testimony was adverse to the existence of a probable causal connection. There must be proof of a causal relation between the injury and the disability. Dotson v. Royal Indemnity Company, 427 S.W.2d 150 (Tex.Civ.App.— Ft. Worth 1968, ref., n. r. e.); Scott v. Liberty Mutual Ins. Co., 204 S.W.2d 16 (Tex.Civ.App.—Austin 1947, ref., n. r. e).

There was little evidence as to the severity of the blow to the head. There is little or no evidence to connect appellee's headaches and dizzy spells with the loss of his right eye. While these complaints are not continuous in nature, they are frequent and are attributed by appellee to changes in the weather.

The complaints as to inability to do close work appear to be related to the loss of his eye. The testimony of the co-employee that appellee should not do high work is based on the employee's opinion of the effect on appellee of the loss of an eye. The only basis for relating the excessive fatigue to the blow on the head appears to be the testimony that this condition appeared sometime after the accident. The complaints relating to the hand and arm cannot be definitely attributed to the blow to the head rather than to the injury to the eye.

This is not a case "where there is a good deal of common and judicial medical knowledge." Here the common experience and knowledge is so speculative and unreliable that a prima facie case was not made out by appellee in view of the unfavorable medical testimony. The testimony of the doctor overcomes the weight of the circumstantial evidence. The total proof is inadequate to support appellee's claim of a causal connection between the blow on the head and the disability which he sustained. Insurance Company of North America v. Kneten, supra; Parker v. Employers Mutual Liability Ins. Co., of Wis., 440 S.W.2d 43 (Tex.1969).

There are two possible causes of appellee's complaints and resulting disability, the injury to the eye and the blow to the back of the head. We cannot say that the disability or the symptoms resulted, more likely than not, from the one rather than the other possible cause in the absence of medical testimony. We reach this decision after discarding the adverse testimony of Dr. Skogland. If the complaints and resulting disability were produced by the injury to the eye, appellee can be compensated only for loss of the eye.

There is evidence to support the jury findings that appellee is totally incapacitated and that this incapacity is permanent. We cannot say that these answers were so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Appellant's Point II is sustained. There is no evidence rising above speculation that the blow to the head received by appellee was a producing cause of appellee's complaints, or the resulting disability.

Since appellee has been fully compensated for the loss of his eye, this judgment is reversed and judgment is here rendered that appellee take nothing by his suit.

PEDEN, Justice (dissenting).

I respectfully dissent. I would affirm the judgment of the trial court.

The majority opinion sustains the appellant's second point of error, which states that there is no evidence that the appellee's complaints were caused in whole or in part by a general injury. A "no evidence" point is a contention that the evidence is legally insufficient, i. e., that there is no evidence of probative force to support the finding in

question. In passing on the point we must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. Garza v. Alviar, Tex., 395 S.W.2d 821.

Thus we may consider only that part of Dr. Skogland's testimony wherein he stated that noises and ringing in the ear, dizziness, impairment of vision, easily becoming tired and inability to concentrate can be symptoms of a post-concussion syndrome; we must disregard that part of his medical testimony which was unfavorable to the appellee.

Polasek testified that he was looking around a little glass porthole when it exploded and hit him in the eyes and head. He cut his nose and hit his head when he went back about twenty inches. He was not knocked down. He was semiconscious. He was taken to a hospital and his right eye was removed that night. He noticed that he had a problem with his arm, hand and finger in the hospital when he "came out from under that dope."

When asked what bothers him other than the loss of his eye, Polasek said "Well—my hand hurts—these two fingers—then I get awful headaches; every time the weather changes my head swells up." He didn't tire on the job before the accident, but he does now. The finger problem makes it difficult to hold the heavy tools he works with.

I would hold that the appellee successfully passed the "no evidence" test in establishing that the blow probably caused symptoms, other than the loss of vision, resulting in general disability. I would permit the jury in this case to decide that the symptoms were causally connected with a general injury from the evidence adduced absent any expert medical testimony of "reasonable medical probability." The onset of Polasek's symptoms which gave rise to general disability was almost immediate. Not so in the cases involving cancer, Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup.1966) and Parker v. Employers Mutual Liability Insurance Co. of Wisconsin, 440 S.W.2d 43 (Tex.Sup. 1969), or in the heart attack cases of Dotson v. Royal Indemnity Co., 427 S.W.2d 150 (Tex.Civ.App.1968, writ ref. n. r. e.) and Otis Elevator Co. v. Wood, 436 S.W.2d 324 (Tex.Sup.1968). Nor were Polasek's symptoms of a nature difficult for laymen to causally connect as were those in the cases just mentioned.

Much of Polasek's evidence as to his disability symptoms must be considered as directly resulting from the loss of his eye, and he offered no expert medical testimony to establish the causal connection between the explosion and the numbness in his fingers, but I would hold that Dr. Skogland's testimony that Polasek's other symptoms can be those of a post-concussion syndrome constitutes some evidence that his disability was probably caused by the blow rather than by the loss of the eye.

I would also overrule the appellant's other points of error.