David H. LEONARD, Appellant,

v.

HARTFORD ACCIDENT AND INDEM-NITY COMPANY, Appellee.

No. 470.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 14, 1971.

Al Taylor of Harrison & Taylor, Houston, for appellant.

Thomas G. Bousquet of Wandel & Bousquet, Houston, for appellee.

SAM D. JOHNSON, Justice.

Workmen's compensation case by David H. Leonard, appellant, against Hartford Accident & Indemnity Company, appellee.

On December 18, 1967, Leonard broke his left wrist and right leg while working for the J & B Building Products Company. In the trial court Leonard alleged two specific injuries, a compound fracture of the right femur and a crush fracture of the left wrist. Leonard further alleged in an additional pleading that the injury to the right leg extended to or affected parts of the body other than the leg causing general disability. In answer to special issues the jury found two specific injuries with some total disability and some permanent partial disability to each member, but did not find that the injury to the right leg extended to or affected parts of the body other than the leg. The trial court entered judgment on the verdict and the appellant has appealed.

Leonard graduated from Conroe High School in June, 1967. He participated in various high school sporting events and was an exceptional athlete. He was 6'4" tall and weighed 230 pounds. Following his graduation from high school, Leonard went to work for J & B Building Products Company in July of 1967. He was working on the roof of a building on December 18, 1967 when he slipped and fell approximately 26 feet to the ground breaking his right leg and left wrist in this fall. He was thereafter hospitalized for 27 days under the care of Dr. Robert Elliott, an orthopedic surgeon. Leonard was released from the hospital in the middle of January, 1968. By October, 1968, Leonard was able to walk without the support of crutches or a cane. In the later part of 1968, he began working with his uncle to learn the auto parts business. This work did not require any lifting, standing for any long periods, climbing or walking any distance. In November, 1969, Dr. Elliott readmitted Leonard to the hospital for two weeks to remove an orthopedic pin which had been placed in his leg. Leonard thereafter continued to work for his uncle up to the time of the trial.

The appellant contends in his first point of error that the trial court erred in overruling the motion for a new trial because

the verdict of the jury is so against the great and overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. This point of error will be overruled.

■ In response to special issues the jury found specific injuries. The jury first found that the percent of the permanent partial disability to Leonard's wrist was 30%. Dr. John Hall, Leonard's physician, stated that Leonard sustained a 20% to 25% permanent disability to his left wrist. Dr. Robert Elliott, the treating physician, testified that Leonard sustained a permanent partial disability in the left wrist of not less than 15% nor higher than 25%. The jury's finding was in accord if not in excess of both physicians' testimony. The jury's finding of a 30% permanent partial disability to appellant's wrist cannot be said to be against the great weight and preponderance of the evidence.

The jury found that there was a 10% permanent partial loss of use of appellant's right leg. This 10% is the exact percentage which was testified to by Dr. Elliott, and is the only estimate given by any party in this suit. Dr. Elliott testified that Leonard told him that he was doing what he wanted to do without limitation and that the right leg was giving him no trouble, that he had no complaints or symptoms with regard to his leg. Dr. Hall testified that Leonard had at no time complained of any problem with his right leg or hip. The jury's finding in this regard is consistent with the facts testified to by all parties, and likewise, cannot be said to be against the great weight and preponderance of the evidence.

Appellant's primary contention, however, is directed to the jury's finding that the injury to the right leg did not extend to or affect parts of the body other than the leg. It is this finding that appellant contends to be against the great weight and preponderance of the evidence. The following is a summary of the record on this point. In March, 1970, Leonard's attorney referred him to a Dr. Neill B. Longley, a radiologist,

for an X-ray examination. Dr. Longley testified that an X-ray of Leonard's lumbar spine (low back) showed a scoliosis, or curvature of eight degrees and a pelvic tilt of eight degrees. Dr. Longley stated that the scoliosis was caused by a shortening of Leonard's leg without regard to what caused the shortening. Dr. Longley stated that a reasonable explanation of the shortening of Leonard's leg would be the overriding of the fracture fragments in the leg at the time of the fracture. Dr. Longley stated that a scoliosis can result in muscle spasms and pain and that weight varying or walking long distances would aggravate this condition. On cross-examination Dr. Longley confirmed that he did not measure Leonard's leg and explained that legs are normally not the same length. He testified that a quarter of an inch in leg lengths would be within normal limits. Dr. Longley testified to no opinion as to the percentage of disability Leonard sustained because of the injury to his leg or because of the scoliosis.

Dr. Robert Elliott testified that Leonard's back demonstrated a pelvic tilt which was purely mechanical. Dr. Elliott testified that it was difficult to measure legs and since they could not be measured exactly it was necessary to use an approximation or average. He measured Leonard's legs shortly before trial and stated that the average difference between the two legs was approximately ⅜th of an inch. Dr. Elliott further testified that no person's legs are exactly the same length and that in a person as tall as Leonard a shortening of one leg of between ⅜th and one-half inch would not be unusual. Dr. Elliott stated that the X-rays showed a complete healing and no shortening of the femur at any time or in any proportion or in any measurement. Dr. Elliott stated that his X-rays proved that the femur had not shortened due to the accident and stated that whatsoever shortening existed was present prior to the accident. Dr. Elliott testified that, " * * .* I don't think this individual sustained any injury to

the back, and I don't think that there is any evidence to equate medically, that he has had a back injury or has any disability to the back; of a permanent nature."

Leonard testified that in February, 1968, he told Dr. Elliott that he was experiencing pain in his arm, his leg, his hip and the lower part of his back and that Dr. Elliott informed him that this would be normal at that stage of recovery. This was testified to be the only occasion during the entire period of over 2½ years of treatment that Leonard ever informed Dr. Elliott that his back was bothering him. At trial Leonard testified that his hip would start hurting him after he walked four or five blocks and that by the time he walked eight blocks he would have to stop and rest. The jury's acceptance of Leonard's testimony might have been affected by the fact that Leonard stated in answer to sworn interrogatories that he had complained to Dr. Hall of his wrist, arm, leg and back pains and then admitted on the trial of the case, that he had not seen Dr. Hall for leg or back pains.

 Where pain or disability is caused solely by an injury to a member of the body compensable under the specific injury provisions of the Workmen's Compensation Act, the employee cannot be compensated under the general disability provisions. Texas Employers' Insurance Association v. Polasek, 451 S.W.2d 260, ref., n. r. e. Where, however, a workman shows that there has been an extension of a specific injury to some part of the body other than to the specific member and demonstrates that a condition of general total permanent incapacity was caused by such extension, he is entitled to compensation for general total permanent incapacity. Petty v. Texas Employers' Insurance Association, 401 S.W.2d 678, ref., n. r. e. The burden of proving the specific injury extended to and affected other portions of the body so as to result in a general injury rests on the claimant. Aetna Casualty and Surety Company v. Bryant, 383 S.W.2d 229, no writ hist.

 It is the appellant's theory that the injury to the right leg resulted in a shortening of that leg and that the shortening of the leg caused the scoliosis or curvature of the spine which in turn produced a general disability. The record indicates that the plaintiff failed at the outset, however, to establish a causal link between the injury to the right leg and any shortening that might have occurred to such leg. The appellant's only evidence on this point was Dr. Longley's testimony that the fracture was a reasonable explanation of the shortening of Leonard's leg and the doctor's statement that the X-rays of Leonard's legs "would go along with some shortening having occurred." Appellant theorizes that the shortening of the leg could not have pre-existed the accident because Leonard could not have been such an outstanding athlete with such a condition. Dr. Longley's testimony and the appellant's theory do not constitute probative evidence of a causal link between the accident and any shortening which may have occurred in Leonard's leg. In addition, such theory was directly rebutted by Dr. Elliott's testimony. Dr. Elliott testified that the shortening of the leg pre-existed the injury and that such condition would not have affected the appellant's athletic ability. We must hold that the jury's finding that the injury to the right leg did not extend to or affect parts of the body other than the leg was not against the great weight and preponderance of the evidence.

The appellant contends in his second point of error that the trial court erred in failing to grant the motion for new trial because the verdict of the jury upon which judgment was entered is so grossly inadequate and unrealistic as to shock the judicial conscience. We have found that the verdict of the jury was supported by sufficient evidence and was not against the great weight and preponderance of the evidence. The amount payable for workmen's compensation has been limited by law. Art. 8306, Sec. 12, Vernon's Ann.Civ.St. This point of error is overruled.

Affirmed.